2006-NMCA-129

144 P.3d 126

**BANKERS TRUST CO., Plaintiff,**

v.

**Mitchell WOODALL a.k.a. Mitch Woodall, Robbin Woodall, and Wells Fargo Bank New Mexico, N.A., Defendants,**

**Tierra Casa Investments, L.L.C., Defendant–Appellant,**

v.

**Gretchen and Steven Welch, Defendants–Appellees.**

**No. 25,930.**

Court of Appeals of New Mexico.

Aug. 23, 2006.

John E. Farrow, Fairfield, Farrow & Strotz, P.C., Albuquerque, NM, for Appellant.

Sylvain Segal, Law Offices of Segal & Whittaker, LLP, Albuquerque, NM, for Appellees.

## OPINION

KENNEDY, Judge.

{1} Mitchell and Robbin Woodall, following their divorce and the subsequent foreclosure and sale of the real property they had purchased during their marriage, each assigned their respective right of redemption to a different assignee. The first assignee to file a petition to redeem the property, Tierra Casa Investments, L.L.C. (Tierra Casa), appeals from the district court's order allowing the other assignee to redeem the property equally with Tierra Casa as tenants in common. Tierra Casa argues that the first in time rule for redemptions applies because: (1) the cotenancy that existed between the Woodalls ended with the foreclosure sale, or (2) the cotenancy that existed between the Woodalls ended with their individual assignments to others of their rights of redemption. As a result, Tierra Casa maintains that, as the first to redeem, it should be allowed to redeem to the exclusion of Gretchen and Steven Welch (the Welches). In other words, it argues that with the cotenancy extinguished, its redemption of the property is not subject to the Welches' right to contribution as cotenants.

{2} We affirm and hold that the Woodalls' cotenancy was not terminated either by the foreclosure sale or their assignments of their rights of redemption to two different parties; the first in time rule therefore does not apply to this case, and Tierra Casa's redemption is subject to the Welches' right of contribution. We hold that parties to whom tenants in common assign their rights to redeem property following foreclosure take their assignments subject to the rights and obligations of their assignors.

## FACTS AND BACKGROUND

{3} The Woodalls were married when they bought the property at issue in this case. Following their divorce, the mortgage on the property was foreclosed and on January 5, 2005, a special master sold the property to Tierra Casa. On January 6, Mitchell Woodall assigned his right of redemption in the property to Tierra Casa, and Robbin Woodall assigned her right of redemption to the Welches. On January 27, the foreclosure sale was confirmed by the district court. That same day, Tierra Casa filed its petition to redeem the property. The next day, the Welches filed their petition to redeem.

{4} The Welches and Tierra Casa both asserted a superior right to redeem the property. The Welches also proposed that they and Tierra Casa be allowed to contribute half of the redemption price as cotenants. The district court agreed to this proposal. Subsequently, this Court decided *HSBC Bank USA v. Fenton*, 2005–NMCA–138, 138 N.M. 665, 125 P.3d 644, which held that, generally, the first to file a petition to redeem property following a foreclosure sale has priority with respect to redemption. *Id.* ¶¶ 1, 10. Tierra Casa asked the district court to reconsider its decision in light of that opinion. On June 14, the district court reaffirmed its decision that Tierra Casa and the Welches were to be allowed to equally redeem the property. Tierra Casa appeals.

## DISCUSSION

### Mortgage Foreclosure Sales Do Not Terminate Cotenancies Until After the Period of Redemption Has Passed

{5} The issues in this case are legal issues and our review is therefore de novo. *See Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582.

{6} Tierra Casa initially argued on appeal that the foreclosure sale terminated the cotenancy because the sale destroyed the unity of possession. *See* 86 C.J.S. *Tenancy in Common* § 11 (1997) (stating that destruction of the unity of possession defeats the cotenancy). Tierra Casa conceded during oral arguments that this argument is incorrect. We agree.

{7} "A 'cotenancy' is a tenancy under more than one distinct title, but with unity of possession." 20 Am.Jur.2d *Cotenancy & Joint Ownership* § 1 (2005). The unity of possession does not require actual physical possession, but merely the *right* to possession. *Id.* § 33. Unity of possession is merely each cotenant's right to possess the whole. *Id.* §§ 32–33. "[U]nity of possession . . . is, of course, simply another way of saying that the tenancy in common is a form of concurrent ownership." 4 David A. Thomas, *Thompson on Real Property* § 32.06(a), at 87 (David A. Thomas ed., 2d ed.2004).

■ {8} Some authorities assert the blanket proposition that a foreclosure sale terminates the cotenancy. *See* 86 C.J.S. *Tenancy in Common* § 11; *Sigman v. Rubeling*, 271 S.W.2d 252, 255 (Mo.Ct.App. 1954). However, in New Mexico, a foreclosure sale is always subject to the owner's right of redemption. NMSA 1978, § 39–5–18(A) (1987). The statutory right of redemption is a right to regain actual physical possession of the property, conditioned upon certain acts. *See id.* We view the "right to possess" as a right that is not destroyed by a foreclosure sale until the time for redemption passes, because a cotenant still has the right to possess the whole until then. *See Bradley v. Bradley*, 554 N.W.2d 761, 764 (Minn.Ct. App.1996) ("Upon expiration of the right of redemption, a redeeming co-tenant's title be-

comes paramount to that of a nonredeeming co-tenant.").

A party may redeem its interest in property lost through foreclosure sale by reimbursing all of the repurchaser's acquisition costs, or if another co-tenant has already redeemed the property, by paying that co-tenant the portion of the redemption money attributable to the later-redeeming co-tenant's interest in the property. A co-tenant who repurchases property lost through foreclosure takes subject to his co-tenant's right of redemption.

*Id.* (citation omitted). Redemption acts to restore the title of property to its status before the sale. *See Velasquez v. Mascarenas*, 71 N.M. 133, 139–40, 376 P.2d 311, 315 (1962) (characterizing the purchase of real property at a tax sale as obtaining an "inchoate title" (internal quotation marks and citation omitted)).

■ {9} At the time of the foreclosure sale, the Woodalls were cotenants. The Woodalls did not assign any of their rights in the property until after the foreclosure sale. Since the foreclosure sale did not terminate the Woodalls' cotenancy, under the doctrine of inurement, a redemption by one cotenant would inure to the benefit of the other cotenant, triggering the latter's right of contribution. In New Mexico, "a cotenant who redeems from a tax sale does so for the benefit of all the cotenants." *Id.* at 138, 376 P.2d at 314; *Chavez v. Chavez*, 56 N.M. 393, 396, 244 P.2d 781, 782 (1952). We hold that this rule applies with equal force to redemption from a mortgage foreclosure sale. *See* 86 C.J.S. *Tenancy in Common* § 63 ("Generally, a redemption from a judicial or foreclosure sale of the common property by one tenant in common inures to the benefit of all the cotenants."). We therefore hold that a foreclosure sale does not extinguish a cotenancy until the time for redemption has passed, and that one cotenant's redemption inures to the benefit of the other cotenants. *See Laura v. Christian*, 88 N.M. 127, 129, 537 P.2d 1389, 1391 (1975) ("[T]he redemption or prevention from loss by one cotenant of common property by payment of an obligation or the purchase of an outstanding interest, which should be discharged or purchased proportionately by co-

tenants, inures to the benefit of the cotenants at their option, subject to the right of contribution."); *Torrez v. Brady*, 37 N.M. 105, 111, 19 P.2d 183, 187 (1932) ("[W]hen a cotenant purchases an outstanding title or claim to the common property, such purchase inures to the benefit of the common estate, subject only to the right of the purchasing cotenant to require a proportionate contribution from the other cotenants.").

## Dual Assignments of Redemption Rights Do Not Terminate Cotenancies

■ {10} Tierra Casa next argues that the Woodalls' assignments of their respective rights of redemption to different parties terminated the cotenancy because there was no longer a confidential relationship between the parties. Tierra Casa relies on *Smith v. Borradaile*, 30 N.M. 62, 227 P. 602 (1922), which noted a number of exceptions to the general rule of inurement between cotenants. *Id.* at 81, 227 P. at 607. These exceptions include: (1) situations where title is perfected in a third party before the cotenant seeks to purchase the property, (2) situations of adverse possession between cotenants, (3) situations where the cotenants are taxed separately so that the other cotenant does not have a general duty to protect the other cotenant's interest, and (4) situations "where the titles derived by cotenants came from different sources, where it is said that the condition establishing a confidential relation between them with reference to the title, that is to say, a fiduciary or trust relation, does not exist." *Id.* It is this fourth exception which concerns us here. Tierra Casa maintains that because each assignee in this case derived its right of redemption from a different source, and the parties are "strangers," the cotenancy was destroyed for lack of a confidential relationship. We disagree with this conclusion.

■ {11} We begin by noting that Tierra Casa agreed during oral arguments that if there was only one assignment in this case, that single assignment would be insufficient to terminate the cotenancy. The general rule is that while "[a] tenant in common who conveys his or her interest to a third person ceases to be a cotenant, ... the purchaser of the undivided share of a tenant in common becomes a cotenant with the remaining owners." *See* 20 Am.Jur.2d *Cotenancy & Joint Ownership* § 40 (footnotes omitted). Furthermore, the cotenant's conveyance only "operates to transfer the identical interest of the grantor in the common property." 86 C.J.S. *Tenancy in Common* § 140(b); *see also* 6 Am.Jur.2d *Assignments* § 144 (1999) ("As a general rule, an assignee takes the subject of the assignment with all the rights and remedies possessed by or available to the assignor ... [and] is subject to any defense that would have been good against the assignee; the assignee cannot recover more than the assignor could recover, and the assignee never stands in a better position than the assignor." (footnotes omitted)). Rather, Tierra Casa asserts that it was the double assignment in this case that effectively ended the cotenancy. We see no reason to carve out an exception where all the cotenants' interests are assigned, as opposed to situations where only one assignment is made.

■ {12} Tierra Casa implies that it would be unfair to force strangers into an unwanted business relationship, but we are not persuaded. Cotenancy interests are freely alienable. "Generally, a tenant in common may convey his or her own interest in the common estate to a stranger without the knowledge or approval of other cotenants." *Landskroner v. McClure*, 107 N.M. 773, 775, 765 P.2d 189, 191 (1988); *see also* 7 Richard R. Powell, *Powell on Real Property* § 50.06[4], at 50–35 (Michael Allan Wolf ed., 2005) ("Without consent of cotenants, each tenant in common may sell or encumber his or her property interest, and thus inject a stranger into the cotenancy."). Had Robbin Woodall not assigned her interest and instead sought to redeem, there would be no more or less of a cotenancy. Also, by purchasing a right of redemption from a divorced cotenant, the purchaser/assignee is charged with constructive knowledge of the existence of the other cotenant's rights. *See, e.g., Fed. Nat'l Mortgage Ass'n v. Elliott*, 1 Kan.App.2d 366, 566 P.2d 21, 26 (1977). Since cotenants may freely inject strangers into the cotenancy, and strangers may freely

choose to enter the cotenancy, we find no basis in this argument to support termination of the cotenancy. Here, Tierra Casa had actual knowledge of the cotenancy.

{13} The principle that strangers may freely enter a cotenancy also defeats Tierra Casa's argument that the lack of confidential relationship between itself and the Welches defeats the cotenancy. As explained in *Smith,*

> Many cases have considered the duty or obligation as to the common estate existing between tenants in common from the standpoint of a sort of confidential relation said to arise by reason of their common ownership, and have denied that such confidential relation exists where the several cotenants derive their title from different sources. But as this confidential relation arises by operation of law upon the arising of the unity of possession, these cases would appear to confuse effect for cause and to deny the distinguishing feature of tenancies of this character as defined by the books.

30 N.M. at 84, 227 P. at 608. *Smith* thus elucidates that the confidential relationship does not create the cotenancy, but that the cotenancy creates the confidential relationship. The fact that Tierra Casa and the Welches are accidental cotenants is of no consequence; a confidential relationship was created when the cotenancy arose, continuing through the foreclosure sale until the period of redemption expires, and Tierra Casa's redemption inures to the benefit of the Welches. *See Laura,* 88 N.M. at 129, 537 P.2d at 1391 (describing the doctrine of inurement).

{14} We recognize that some authorities hold that "if tenants' interests accrue at different times and under different instruments," the doctrine of inurement does not apply. *See* 20 Am.Jur.2d *Cotenancy & Joint Ownership* § 76. However, the better rule says otherwise. Tenants in common hold distinct titles. *See id.* § 1; *see also* 86 C.J.S. *Tenancy in Common* § 3. The only requirement of a tenancy in common is unity of *possession;* tenants in common "are united only by their right to possession of the property." 86 C.J.S. *Tenancy in Common* § 3.

In other words, no privity of estate exists between [the cotenants], but as between themselves their rights and interests are several; there is no unity of title between them, each owner being considered solely and severally seized of a share. In fact, there may be an entire disunion of time, interest, or title, the cotenants may claim their several titles and interests from entirely different sources, the qualities of their estates may be different, the shares may be unequal, and the modes of acquisition of title may be unlike, and they may hold by different tenures.

*Id.* (footnotes omitted). Because the only unity that a tenancy in common requires is unity of possession, and the cotenants separate title is freely alienable to strangers, we see no reason why the doctrine of inurement should not apply where the cotenants took title under separate instruments or in different modes. We also note that cotenancies between remote assignees may exist in many other situations. *See, e.g., Olson v. H & B Props., Inc.,* 118 N.M. 495, 497, 882 P.2d 536, 538 (1994) (describing the 1934 creation of a cotenancy in the usage of a ditch, where the two current cotenants in the ditch usage were successors in interest to five original cotenants); *Earp v. Mid–Continent Petroleum Corp.,* 167 Okla. 86, 27 P.2d 855, 862 (1933) (holding that different lessees under separate leases from several cotenants were tenants in common). To proceed as Tierra Casa urges would require this Court to develop at least three rules: a rule for when some, but not all, of the cotenants assign their rights of redemption; a rule for situations where all of the cotenants assign their rights of redemption; and a rule for when no cotenants assign their rights of redemption. We hold that the Woodalls' separate assignments to two different parties in this case was insufficient to terminate their cotenancy. Tierra Casa and the Welches took as tenants in common, and therefore, Tierra Casa's redemption of the foreclosed property inured to the benefit of its cotenants, the Welches, who retained a cotenant's right of contribution, as properly held by the district court.

### The First in Time Rule

{15} Tierra Casa argues that since it was the first to file a petition for redemption,

it should be entitled to redeem to the exclusion of the Welches. In *HSBC Bank USA,* we held that due to the absence of a statutory order of priority, the first to file a petition for redemption was entitled to redeem. 2005–NMCA–138, ¶ 10, 138 N.M. 665, 125 P.3d 644. However, *HSBC Bank USA* involved a race to redeem between the assignee of a lien creditor and the assignee of the owner. *Id.* ¶¶ 1–3. While *HSBC Bank USA* affirms that there is no priority between redemptioners, neither party in that case took their assignments subject to the right of contribution from a cotenant. *See id.* ¶¶ 2–3, 10.

{16} In this case, unlike *HSBC Bank USA,* there is only one redemption-Tierra Casa's. As explained above, Tierra Casa's redemption inured to the benefit of the other cotenants, namely the Welches. Tierra Casa essentially redeemed the property for the benefit of other cotenants as well, and no additional redemption is necessary. The Welches do not redeem the foreclosed property as additional redemptioners, but must instead, as cotenants, give contribution to Tierra Casa to rehabilitate their interest in the property. There having been but one redemption in this case, the rule in *HSBC Bank USA* does not apply.

CONCLUSION

{17} We affirm.

{18} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN and MICHAEL E. VIGIL, Judges.