IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2021-NMCA-010

Filing Date: December 10, 2020

No. A-1-CA-37609

BOKF, N.A.,

      Plaintiff,

v.

THE UNKNOWN HEIRS AND DEVISEES
AND LEGATEES OF LINORA P. PACHECO,
Deceased; JOSE PACHECO; SANTA FE
COMMUNITY HOUSING TRUST; NEW
MEXICO MORTGAGE FINANCE
AUTHORITY; and OCCUPANTS OF THE
PROPERTY,

      Defendants,

and

ASHOK KAUSHAL,

      Petitioner-Appellant,

v.

SANTA FE COMMUNITY HOUSING
TRUST,

      Petitioner-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**David K. Thomson, District Judge**

Released for Publication May 4, 2021.

Holmes Law Firm, PC
Kevin P. Holmes
Albuquerque, NM

High Desert Lawyers, LLC
Eric N. Ortiz
Albuquerque, NM

for Appellant

VanAmberg, Rogers, Yepa & Abeita, LLP
Ronald J. VanAmberg
Santa Fe, NM

for Appellee

## OPINION

**HANISEE, Chief Judge**.

**{1}**     This appeal arises from litigation regarding assignment of redemption rights to Appellant Ashok Kaushal by some, but not all, heirs of decedent Linora Pacheco following a foreclosure judgment and sale of her residence. Kaushal appeals from a district court order granting Appellee Santa Fe Community Housing Trust's (the Trust) petition for redemption and motion for summary judgment, the effect of which was to reject Kaushal's assigned redemption interest. On appeal, Kaushal disputes the district court's determinations that the statutory right of redemption requires a unified interest and possession of title to the property being assigned and redeemed. We reverse and remand.

## BACKGROUND

**{2}**     Pacheco obtained a mortgage on her home in March 2012, from National Banking Association d/b/a Bank of Oklahoma (the Bank). Through a mortgage subordination agreement, the Trust held a subordinate mortgage on Pacheco's property. The Bank initiated foreclosure proceedings in December 2014. Pacheco died before the foreclosure action was brought to judgment and the case continued against her estate. At the time of her death, Pacheco was survived by her four sons: Raymond, Joseph, Bryan, and Richard. The Bank obtained a foreclosure judgment on Pacheco's property in June 2017. During the underlying proceedings, the district court also recognized the Trust's subordinate mortgage. In September 2018 the Bank held a foreclosure sale at which it was the highest bidder. The district court entered an order finalizing the foreclosure sale on October 24, 2017. By that date, Bryan and Richard were deceased.

**{3}**     After the foreclosure sale, Kaushal purchased the statutory right to redeem the property from Pacheco's two surviving sons, Joseph and Raymond. In November 2017 Kaushal tendered payment in the amount of $154,712.93 for the value bid at the foreclosure sale, plus interest and fees, and filed a redemption petition. The Trust subsequently filed its own redemption petition based on its status as a junior lienholder.

In connection with its redemption petition, the Trust also attempted to tender a cashier's check in the required amount; however, the district court clerk refused to accept the Trust's payment absent a court order requiring that it do so. The Trust then filed a motion requesting the district court to issue an order allowing the Trust to deposit funds for the property.

{4}     Kaushal responded, arguing that the Trust's redemption petition was invalid and that, in any event, Kaushal's right to redeem was superior as the assignee of the owner's right of redemption. The Trust then filed a supplement to its redemption petition asserting that Richard's daughter, Claudia Urioste, had assigned her redemption right to the Trust. In his response thereto, Kaushal maintained that the assignment from Urioste to the Trust was invalid because it was made six weeks after expiration of the redemption period. The Trust then moved for summary judgment, arguing among other things that Kaushal's petition was invalid because he was required to possess one hundred percent of the redemption rights passed from Pacheco to her heirs and did not.

{5}     The district court granted both the Trust's petition for redemption and its motion for summary judgement. In its written order, the district court explained:

> The basic flaw in [Kashaul's] argument is that he cannot redeem what he does not legally own. There is nothing in the record that transfers title of the property to the part[ies] that allegedly assigned the redemption interest. While the person[s] assigning [their rights of redemption] may be [heirs], they [the assignees] have to establish[] legal ownership in the property.

{6}     The district court's order relied in part on a decision by the Alabama Supreme Court dealing with the redemption of partnership property, *Costa & Head (Birmingham One), Ltd. v. Nat'l Bank of Commerce of Birmingham*, which states: "One who has an interest as a partner in mortgaged property may enforce his equitable right to redeem. So, in the case of a mortgage of partnership property, either partner is a debtor entitled to exercise a statutory right to redeem from a sale on foreclosure, and he may redeem the entire property." 569 So. 2d 360, 364-65 (Ala. 1990) (alteration, internal quotation marks, and citation omitted). The district court distinguished Kaushal's right to redeem from that determined to be valid in *Costa*, concluding that unlike a legal partner, "one heir has no legal right to assign the whole of the interest (an undivided interest) to a third party." Kaushal appeals.

**DISCUSSION**

{7}     On appeal, Kaushal raises three issues: first, he claims that a redemption petitioner need not possess one hundred percent of the redemption interest to redeem a property after foreclosure. Second, he argues that a former defendant owner's heirs need not first have received title to exercise or assign redemption rights. Third, Kaushal asserts that the Trust's petition for redemption is invalid because his petition has priority and the Trust failed to deposit earnest money in the court registry as required by the

redemption statute. The Trust answers that Kaushal's petition was defective, as determined by the district court, because he lacked title to the entirety of the property and failed to obtain a unified interest.[1] Regarding the earnest money declined by the district court, the Trust argues that it substantially complied with the statutory redemption requirements. For the reasons explained below, we hold that under New Mexico law, it was not necessary for Kaushal to obtain a unified interest to exercise his assigned rights of redemption, and that Pacheco's heirs need not have first received title to the foreclosed property in order to assign their rights of redemption. Kaushal's interest, however, is limited to those interests possessed by the assignees—two of Pacheco's four surviving sons—at the time of assignment. We also conclude that the Trust substantially complied with the statutory requirements applicable to its own right of redemption. We remand for further proceedings.

## Standard of Review

**{8}** Kaushal's arguments on appeal challenge the application of law to the facts of this case. "We review de novo the trial court's application of the law to the facts in arriving at its legal conclusions." *Kokoricha v. Estate of Keiner*, 2010-NMCA-053, ¶ 11, 148 N.M. 322, 236 P.3d 41 (internal quotation marks and citation omitted). To the extent determination of the issues presented requires that we engage in statutory interpretation, we engage in a de novo review in which "our charge is to determine and give effect to the Legislature's intent." *Little v. Jacobs*, 2014-NMCA-105, ¶ 7, 336 P.3d 398 (internal quotation marks and citation omitted).

## I. Under the New Mexico Redemption Statute, Kaushal Need Not Possess a Unified Redemption Interest to Redeem

**{9}** Kaushal argues that the plain language of the redemption statute makes it clear that a redemption petitioner need not possess one hundred percent of the possible redemption interests to redeem a property after a foreclosure sale. In New Mexico, the statutory redemption right is created by the State's foreclosure redemption statute. NMSA 1978, Section 39-5-18 (2007). The redemption statute provides that "real estate may be redeemed by the former defendant owner of the real estate or by any junior mortgagee or other junior lienholder whose rights were judicially determined in [a] foreclosure proceeding[.]" Section 39-5-18(A). Importantly for our purposes, the redemption statute identifies the term "owner" as including an owner's "personal representatives, heirs, successors and assigns." Section 39-5-18(D). Consistent with the express language of the statute, New Mexico courts have held that the right of redemption is an assignable right. *See W. Bank of Las Cruces v. Malooly*, 1995-NMCA-044, ¶ 9, 119 N.M. 743, 895 P.2d 265 (holding that "our redemption statute authorizes a

---

[1]Kaushal additionally asserts that the assigned right of redemption from Urioste is invalid because it occurred following the expiration of the redemption period. However, we need not resolve that issue given our conclusion that Kaushal's interest is limited to the fifty percent he was assigned, which did not include the interest purportedly assigned by Urioste to the Trust.

holder-by-assignment of a junior lien to redeem from the judicial sale of foreclosed property").

**{10}** The statute also prioritizes the rights of former-defendant owners over the rights of junior lien holders. *See* § 39-5-18(A)(3) ("[T]he former defendant owner shall have the first priority to redeem the real estate. If the former defendant owner does not redeem the real estate . . . each junior mortgagee or junior lienholder shall have a right to redeem the real estate."). In other words, each category of "former defendant owner"— that is, "personal representatives, heirs, successors and assigns"— has the first opportunity to redeem a foreclosed property in New Mexico. However, the statute is silent on whether a prioritized redeeming former defendant owner must possess a unified interest—i.e. one-hundred-percent—of the redemption right.

**{11}** Section 39-5-18 was amended in 2007 and it is the amended language that the parties argue requires or does not require that every heir assign their percentage interest to a single assignee in order for the right of redemption to accrue in that assignee. *See id.* Kaushal contends that the district court's holding that "one heir has no legal right to assign the whole of the interest (an undivided interest) to a third party" is not supported by the language of the amended statute. Nowhere in the redemption statute, he explains, did the Legislature declare that all heirs must act in concert to redeem a deceased former owner's property. Kaushal also asserts that the district court's conclusion is inconsistent with the plain language of the statute, which he argues "makes clear that the [statutory] enumerated actors act on behalf of the defendant-owner." The Trust argues that the Legislature could not have intended that opportunists and speculators could obtain a redemption right from an heir of a decedent mortgage holder post foreclosure and thereby "spring ahead of legitimate creditors." The parties also present starkly contrasting public policy arguments regarding the potential impact of a unity requirement. Kaushal suggests that such would lead to "absurd, unworkable results that the Legislature could not have intended." The Trust, on the other hand, argues that if Kaushal's position is correct, it would cause a return to "the chaos which the 2007 amendment to the statute sought to eliminate."

**{12}** Prior to the 2007 amendment, the right of redemption, under the New Mexico foreclosure statute provided that "[a]fter sale of [any] real estate pursuant to any such judgment or decree of any court, the real estate may be redeemed by the former defendant owner of the real estate, his heirs, personal representatives or assigns or by any junior mortgagee or other junior lienholder." Section 39-5-18(A) (1987). This statute did not prioritize the redemption rights of the former defendant owner or his heirs and assignees or junior lienholders. *See id.*

**{13}** In 2007 Subsection D of Section 39-5-18 was amended to provide and explain that "the terms 'owner,' 'junior mortgagee,' 'junior lienholder,' and 'purchaser' include their respective personal representatives, heirs, successors and assigns." Section 39-5-18(D). The 2007 amendment to Subsection D of Section 39-5-18, established a redemption priority for those parties falling within classification of "owner." *See* § 39-5-18(A)(3) (providing that "the former defendant owner shall have the first priority to

redeem the real estate"). The parties debate the legislative intent behind the plural use of "heirs, successors and assigns." Kaushal argues that the Legislature's use of the plural "heirs" was simply stylistic and provided generalized terms, while the Trust claims that the use of the term "heirs" evidences the Legislature's intent to require a "unity of interest." Additionally, the Trust claims that by requiring a unified interest, the Legislature eliminated the need to address conflicts between competing heirs and their assignees. Instead, the Trust argues that to maintain the legislative intent behind the amendments, a redeeming petitioner must unify however many interests exist in the property for which redemption is sought. The Trust also suggests that a unified interest requirement would not prevent heirs from maintaining the ability to save a family property. For instance, the Trust posits that if the original mortgagor is unable to make a mortgage payment, any heir can step in and help save the property from foreclosure. The Trust also insists that because of the typically lengthy timeline of a foreclosure action, when a property goes to a foreclosure sale, it is by then evident that none of the heirs are prepared or interested in redeeming the property.

**{14}** We begin our analysis by noting that nothing about the amendment to Section 39-5-18 expressly resolves the question of whether the right of redemption requires unification of interests. Thus, we agree with Kaushal that the plain language of the current and applicable redemption statute, including use of a general plural term in a provision that lists all party classifications plurally, does not require all heirs to act in unity to redeem a former defendant owner's property. Had the Legislature intended to require redemption petitioners to act with one hundred percent of the redemption interests, it could have expressly included such a requirement in the amended statute. "The Legislature knows how to include language in a statute if it so desires." *State v. Greenwood*, 2012-NMCA-017, ¶ 38, 271 P.3d 753 (alteration, internal quotation marks, and citation omitted); *see also State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 20, 117 N.M. 346, 871 P.2d 1352 (affirming that courts may add words to a statute only "if it is necessary to do so to carry out the legislative intent or to express the clearly manifested meaning of the statute" (internal quotation marks and citation omitted)). The district court's ruling and the Trust's interpretation of this statute would require this Court to add words that the Legislature chose not to include, something we will not do.

**{15}** Indeed, New Mexico case law points away from such a requirement. In *Banker's Trust Co. v. Woodall*, a recently divorced husband and wife assigned each of their redemption rights to foreclosed property to separate purchasers and both assignees attempted to redeem. 2006-NMCA-129, ¶ 1, 140 N.M. 567, 144 P.3d 126. We first determined that the husband and wife's cotenancy was not "terminated either by the foreclosure sale or their assignment of their rights of redemption to two different parties." *Id.* ¶ 2. We further concluded that because the foreclosure sale did not terminate the cotenancy, under the doctrine of inurement, a redemption by one cotenant would inure to the benefit of the other cotenant, triggering the latter's right of contribution. *See id.* ¶ 9; *see also Velasquez v. Mascaranas*, 1962-NMSC-157, ¶ 12, 71 N.M. 133, 367 P.3d 311 (stating that in New Mexico, "a cotenant who redeems from a tax sale does so for the benefit of all the cotena[n]ts"). Cotenancy interests are freely alienable and "[g]enerally, a tenant in common may convey his or her own interest in the

common estate to a stranger without the knowledge or approval of other cotenants." *Woodall*, 2006-NMCA-129, ¶ 12 (internal quotation marks and citation omitted). In *Woodall*, we also explained that "by purchasing a right of redemption from a divorced cotenant, the purchaser/assignee is charged with constructive knowledge of the existence of the other cotenant's [redemption] rights." *Id.* Thus in *Woodall*, the separate assignees of cotenants' redemption rights could redeem the property as cotenants. *See id.* ¶ 9. Notably in *Woodall*, each assignee's non-unified right of redemption was determined to be valid, and only upon redemption added up to a one-hundred percent right of redemption. *See id.*

**{16}** Kaushal declares that *Woodall* concludes that no redeeming petitioner must possess one hundred percent of the redemption interests on a property to redeem, given that clearly in that case neither assignee did. The Trust answers that because *Woodall* was decided in 2006, prior to the 2007 amendments, it is inapplicable. Further, the Trust claims that the Legislature is presumed to know existing case law and therefore grasped "the problems" arising from *Woodall*. *See State v. Cleve*, 1999-NMSC-017, ¶ 14, 127 N.M. 240, 980 P.2d 23 (stating that "the Legislature is presumed to act with knowledge of relevant case law") (alteration, internal quotation marks, and citation omitted). But *Woodall*'s applicability, and the question of a unification requirement, does not turn on the 2007 amendment to the redemption statute. We explain.

**{17}** As the assignee to two heirs' redemption rights and the junior lienholder respectively, Kaushal and the Trust hold valid and separate redemption rights. Under New Mexico's foreclosure redemption statute, Kaushal's redemption rights have priority given that an owner's assignee is included in the statutory definition of a defendant owner. Section 39-5-18(A). However, he holds only a fifty-percent redemption interest in the property. To reiterate, in *Woodall*, we determined that cotenants' separate title is freely alienable to strangers and each assignee stands in the shoes of the assignor. *See Woodall*, 2006-NMCA-129, ¶ 14. A formal opinion of this Court is controlling authority. *See Gulbransen v. Progressive Halcyon Ins. Co.*, 2010-NMCA-082, 148 N.M. 585, 241 P.3d 183. As in *Woodall*, Raymond and Joseph, separate heirs, assigned their rights of redemption to Kaushal. Because the plain language of the 2007 version of Section 39-5-18 does not include a unity requirement, and our case law has previously determined that the separate assignments of redemption rights can be exercised by multiple assignees, we have no basis to conclude that Kaushal was required to possess one-hundred percent of the possible redemption interests. "We may only add words to a statute where it is necessary to make the statute conform to the [L]egislature's clear intent, or to prevent the statute from being absurd." *State v. Maestas*, 2007-NMSC-001, ¶ 15, 140 N.M. 836, 149 P.3d 933.

## II. The Heirs of a Former Defendant Owner Did Not Need to Possess Title to Assign Redemption Rights

**{18}** As mentioned above, the district court determined that Kaushal's redemption petition is invalid because there was "nothing in the record that transfers title of the

property to the party that allegedly assigned the redemption interest." Kaushal argues the district court erred because a former defendant owner's heirs need not have first received title to foreclosed property in order to exercise the statutory right of redemption as to that property, and that the district court's reliance on *Costa* confused the statutory right of redemption with that of equitable redemption. Kaushal points to language, within *Costa*, relied upon by the district court stating that "[o]ne who has an interest as a partner in mortgaged property may enforce his equitable right to redeem."[2] 569 So. 2d at 364 (internal quotation marks and citation omitted). The Trust responds that the district court's holding relates to the unity of interest argument upon which it prevailed.

**{19}** Kaushal again relies on the plain meaning of Section 39-5-18 to argue that title need not be received to exercise redemption rights on the land. Kaushal contends that because the plain language of the redemption statute and the Legislature's definition of former "defendant owner" includes the former defendant owner's heirs, the heirs stand in the shoes of the former defendant owner. Thus, actual title need not have been transferred to an heir in order for the heirs to assert or assign a right of redemption.[3] The Trust maintains that title is, as the district court determined, required and that Kaushal "at best holds a [fifty-percent] tenancy in common redemption interest." For the following reasons, we hold that title is not required to exercise redemption rights.

**{20}** Kaushal is correct that the plain language of the redemption statute does not require that heirs first have title to the entirety of the property to assign or exercise redemption rights. Again, had the Legislature intended to require redemption petitioners to acquire title prior to exercising redemption rights, it could have included such a requirement in the amended statute. *See Greenwood*, 2012-NMCA-017, ¶ 38. Notably, the redemption statute identifies the term "owner" as including an owner's "heirs" and "assigns." Section 39-5-18(D). It would be redundant for the Legislature to employ the terms "heirs" and "assigns" in that context if in fact such parties would first have to acquire title—thereby becoming owners, and falling within the first category of those entitled to redeem under the statute. *See United Nuclear Corp v. Allstate Ins. Co.*, 2012-NMSC-032, ¶ 28, 285 P.3d 644 (noting that interpreting statutory terms to avoid redundancy is one rule of construction, though not absolute).

**{21}** Moreover, by amending the statute to clarify the definition of a term in a manner that included classifications that by their nature contemplate an absence of titled

---

2Kaushal also suggests that the Alabama redemption statute is not nearly as explicit as the New Mexico redemption statute on who may exercise the right of redemption. However, he has not provided the specific Alabama statute, nor has he developed this argument further. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed.").

3Kaushal also claims that even if the redemption statute in New Mexico required the heirs to first have title before assigning their redemption rights, the heirs' assignment would have been valid under the doctrine of after-acquired title. Although it is not necessary to address this argument given our holding today, we assume, without deciding, that the doctrine is not applicable to the circumstances herein. Rather, our New Mexico Supreme Court has applied the doctrine when there are two chains of title originating from a common grantor. *See Hays v. King*, 1989-NMSC-078, ¶ 8, 109 N.M. 202, 784 P.2d 21. The doctrine "estops a grantor who obtains title to land after already granting the land from claiming the land as against the grantee." *Rendleman v. Heinley*, 2007-NMCA-009, ¶ 3, 140 N.M 912, 149 P.3d 1009.

ownership, the Legislature expressed its intent in a manner inconsistent with the Trust's argument. *See* § 39-5-18(D). To conclude that heirs or assignees require title in order to exercise their right of redemption would reclassify them as a different category of owner under the statute, rendering the statute's use of the terminology "heirs" or "assignees" a legal nullity. "We presume that the Legislature is well informed regarding existing statutory and common law and does not intend to enact a nullity." *Benavidez v. Sierra Blanca Motors*, 1996-NMSC-045, ¶ 18, 122 N.M. 209, 922 P.2d 1205. We are precluded from interpreting a statute in a manner that excludes terminology chosen by the Legislature or adds terminology not chosen by the Legislature. Rather, it is our task to discern the plain language using ordinary definitions of a given legislative enactment, and effectuate its purpose based upon those words and applicable precedent. "New Mexico courts have long honored this statutory command through application of the plain meaning rule, recognizing that when a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *Quynh Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 37, 147 N.M. 583, 227 P.3d 73 (alteration, internal quotation marks, and citation omitted). Because the Legislature did not include a requirement that the heirs or assigns of a former defendant owner possess title to exercise or assign redemption rights, we cannot add such a requirement to Section 39-5-18.

**{22}** Finally, in New Mexico, a foreclosure sale is subject to redemption by the former defendant owner until the redemption period expires. *See* § 39-5-18(A). The statutory right to redeem treats certain categories of non-owners, such as assignees, as well as heirs, as defendant owners. *See* § 39-5-18(D). It provides a right "to regain actual physical possession of the property" by the identified categories of defendant owner. *Woodall*, 2006-NMCA-129, ¶ 8. As such, the "right to possess" property is not destroyed by a foreclosure sale until the period of redemption expires because a former defendant owner still has the right to possess the whole until then. *See id*. Because the defendant owners hold the right to possess the property until the expiration of the redemption period, it would be impractical to require an assignee to obtain title during such period. For these reasons, the district court erred in concluding that Joseph and Raymond needed to first obtain title prior to the assignment of their redemption rights, and Kaushal was therefore assigned invalid rights of redemption.

### III. The Trust and Kaushal Substantially Complied With the Statutory Requirements for Redemption

**{23}** Kaushal finally contends that the Trust's redemption petition is invalid and unenforceable for two reasons. First, he argues that the plain language of the amended redemption statute provides that a junior lien holder's redemption right only accrues if the property owner does not exercise his or her right. Second, he contends that the Trust's petition was rendered invalid by the Trust's failure to deposit money in the district court's registry as required by the foreclosure redemption statute. The Trust does not appear to dispute the priority of its redemption petition, but argues that it substantially complied with the statutory requirements for redemption even though it failed to deposit money in the court registry. The Trust also argues that Kaushal did not

serve his petition for redemption on any of the parties to the foreclosure proceedings, particularly any representative of the Trust, and therefore his petition is defective.

**{24}** The plain language of the New Mexico redemption statute provides two requirements that must be met to redeem property. *See* § 39-5-18(A) (2); *Chapel v. Nevitt*, 2009-NMCA-017, ¶ 27, 145 N.M. 674, 203 P.3d 889. Under Section 39-5-18(A)(2), "the debtor must (1) petition the district court and (2) deposit a sum of money in the court registry within nine months from the date of the sale." *Nevitt*, 2009-NMCA-017, ¶ 27 (emphasis omitted). "Our cases have consistently held that substantial compliance with both statutory requirements is required in order to redeem property." *Id.* It is a violation of public policy "to prevent redemption that is in accordance with the statute." *Dalton v. Franken Const. Cos.*, 1996-NMCA-041, ¶ 9, 121 N.M. 539, 914 P.2d 1036 (internal quotation marks and citation omitted).

**{25}** Kaushal asserts that our courts have been reluctant to honor "reasonable attempts" or "substantial compliance," in this context, and when they have honored such attempts they have required absolute proof that attempted compliance would have been successful and that no other bars to a successful petition exist. Kaushal points to *Dalton* to support this assertion, where we held that the tender of an unendorsed cashier's check did not satisfy the statute. *Id.* ¶ 12. The cashier's check in *Dalton* could only be negotiated after an endorsement "by all three payees[, b]ut the bank refused to endorse the check." *Id.* We also noted that *Dalton*'s "failure to deposit cash with the district court clerk was more than merely a technical deficiency[,]" and that "[i]t is effective action, not good intentions, that the statute calls for." *Id.* ¶¶ 14, 19 (internal quotation marks and citation omitted). Kaushal also relies on *Chapel*, in which our New Mexico Supreme Court held that a redeeming petitioner did not substantially comply when that petitioner never deposited any sum of money in the district court registry. *See* 2009-NMCA-017, ¶ 30. Rather, the petitioner's only attempt at compliance was the tender of a $2,000 check (one percent of the purchase price) and the execution of a promissory note. *Id.* ¶¶ 7, 30.

**{26}** The Trust argues that its actions constitute substantial compliance and distinguishes its effort from that of the petitioners in *Dalton* and *Chapel*. We agree. It is undisputed that the Trust petitioned the district court and met the first requirement of New Mexico's redemption statute. *See* § 39-5-18(A). Additionally, the Trust attempted to tender a cashier's check made out to the First Judicial District Court in the amount of $155,091. Because the district court clerk refused to accept the cashier's check, the Trust filed a motion requesting that the district court issue an order permitting the Trust to deposit funds for the property. Unlike the petitioner in *Dalton* who attempted to deposit an unendorsed nonnegotiable check, the Trust tendered a fully negotiable instrument. Additionally, unlike the petitioner in *Chapel* who attempted compliance by delivering a check for $2,000, the Trust attempted to submit a check for the entire purchase price. The Trust's failure to deposit the check in the district court registry—because its check was rejected by the district court—was therefore "merely a technical deficiency." *Dalton*, 1996-NMCA-041, ¶ 14.

**{27}** Despite the Trust's contentions to the contrary, we similarly conclude that Kaushal substantially complied with the redemption statute requirements. The amended redemption statute provides that "[c]opies of the petition for redemption shall be served upon the purchaser of the real estate at the judicial foreclosure sale and upon all parties who appeared in the judicial foreclosure case[.]" Section 39-5-18(A)(2). Our review of the record reveals that although Kaushal failed to serve his redemption petition on the Trust, he petitioned the district court and did serve Pacheco's heirs and the Bank. *See* § 39-5-18(A). He also deposited a fully negotiable instrument for the fully required amount of the foreclosure sale within the redemption period. Because Kaushal served the parties other than the Trust, petitioned the district court and tendered a fully negotiable instrument, he substantially complied with the redemption statute requirements. *See Nevitt*, 2009-NMCA-017, ¶ 27. Kaushal's failure to serve his redemption petition on the Trust was not more than "merely a technical deficiency." *Dalton*, 1996-NMCA-041, ¶ 14. For these reasons, we conclude that both Kaushal and the Trust substantially complied with the statutory redemption requirements and therefore the parties' redemption petitions were valid.

**CONCLUSION**

**{28}** For the foregoing reasons, we reverse the district court's order granting the Trust's redemption petition and summary judgment for the Trust and remand to the district court to allow for the exercise of Kaushal's, along with the Trust's, rights to redemption consistent with this opinion.

**{29} IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JACQUELINE R. MEDINA, Judge**