This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

No. A-1-CA-39814

**BOKF, N.A.,**

Plaintiff,

v.

**THE UNKNOWN HEIRS AND DEVISEES AND LEGATEES OF LINORA P. PACHECO, Deceased; JOSE PACHECO; SANTA FE COMMUNITY HOUSING TRUST; NEW MEXICO MORTGAGE FINANCE AUTHORITY; and OCCUPANTS OF THE PROPERTY,**

Defendants,

and

**ASHOK KAUSHAL,**

Petitioner-Appellant,

v.

**SANTA FE COMMUNITY HOUSING TRUST,**

Petitioner-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Bryan P. Biedscheid, District Court Judge**

Ferrance Law, P.C.
David A. Ferrance
Albuquerque, NM

for Appellant

VanAmberg, Rogers, Yepa, Abeita, Gomez & Wilkinson LLP
Ronald J. VanAmberg
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**HANISEE, Judge.**

**{1}** Plaintiff Ashok Kaushal appeals the district court's grant of Santa Fe Community Housing Trust's (the Trust) motion to present judgment on the mandate. This appeal returns to us following our opinion in *BOKF, N.A. v. Unknown Heirs of Pacheco* (*Kaushal I*), 2021-NMCA-010, 484 P.3d 1020, regarding the same parties, redemption rights, and property. *Kaushal I* held in part that both Kaushal and the Trust substantially complied with the redemption statute to redeem property as assignee of an owner and a junior lienholder, respectively. *Id.* ¶ 27. This Court also remarked that Kaushal possessed only half of the redemption rights available to defendant owners, of which there were four who owned the property as cotenants prior to foreclosure. *Id.* ¶ 17. Upon remand, the district court concluded that the other half of the property should have fallen to the Trust as a junior lienholder. Kaushal argues this determination is contrary to the prioritization of interests outlined under NMSA 1978, Section 39-5-18(A)(3) (2007). We agree, and again reverse and remand for further proceedings consistent with this opinion.

**DISCUSSION**

**{2}** The complicated facts and procedural history that precede this opinion can be found in *Kaushal I. See* 2021-NMCA-010, ¶¶ 2-6. There, we stated that "[u]nder New Mexico's foreclosure redemption statute, Kaushal's redemption rights have priority given that an owner's assignee is included in the statutory definition of a defendant owner. However, he holds only a fifty-percent redemption interest in the property." *Id.* (citation omitted). Although we noted that "the statute is silent on whether a prioritized redeeming former defendant owner must possess a unified interest—i.e. one hundred percent—of the redemption right," we determined there was "no basis to conclude that Kaushal was required to possess one-hundred percent of the possible redemption interests." *Id.* ¶¶ 10, 17. We also held, as contested by the parties, that both Kaushal and the Trust substantially complied with the redemption statute to redeem the property at issue. *Id.* ¶¶ 23-27. It bears reiterating, though, that Kaushal's compliance was as an assignee of an owner, while the Trust's was as a junior lienholder. *Id.* ¶ 17. In a nutshell: Kaushal was entitled to redeem, but our remarks on his fifty percent interest and the Trust's compliance with the redemption statute did not mean to declare—as seems to have been perceived on remand—that Kaushal's right to redeem was limited to half the

property and the Trust, despite being a junior lienholder, was entitled to redeem, the other half of the property.

{3}     This misunderstanding pervaded the proceeding on remand. First, the Trust filed a motion for judgment on the mandate, claiming that under *Kaushal I*, Kaushal redeemed fifty percent of the property and the Trust redeemed the other half. The district court granted the motion in a two-page judgment determining the parties each possessed a half interest in the property as tenants in common, specifically noting the Trust redeemed the remaining fifty percent interest as a junior lienholder. To reiterate, it appears that the Trust and the district court interpreted *Kaushal I* to mean that since Kaushal possessed fifty percent of the redemption rights, he could at most redeem only fifty percent of the property title and the Trust must therefore have the right to redeem the other half.

{4}     Kaushal challenges this interpretation of *Kaushal I* on appeal, claiming that the district court erred by awarding half of the property ownership to him and half to the Trust. He argues that the district court improperly read *Kaushal I*'s determination that he possessed merely half of the redemption rights to mean that the other half must fall to the Trust as junior lienholder. He further argues that the redemption statute, § 39-5-18(A)(3), indicates that former defendant owners—and their heirs and assignees such as Kaushal—have a higher priority over lienholders such as the Trust. As Kaushal articulates, he and the Trust are not tenants in common, but instead he should have been awarded the entire property since his proper cotenants—the other owners, heirs, and assignees—did not timely exercise what he describes as their rights of contribution. The Trust argues that the opinion *did* indicate the other half of the property belonged to it. Neither is quite correct, but Kaushal is much closer.

{5}     "Our Supreme Court has held that a decision by an appeals court on an issue of law made in one stage of a lawsuit becomes binding on subsequent trial courts as well as subsequent appeals courts during the course of that litigation." *Bank of N.Y. v. Romero*, 2016-NMCA-091, ¶ 9, 382 P.3d 991 (internal quotation marks and citations omitted). "When there is any doubt or ambiguity regarding the appellate mandate, the meaning of the appellate opinion governs." *Id.* (alteration, emphasis, internal quotation marks, and citations omitted). "Whether law of the case applies, as well as how it applies, are questions of law subject to de novo review." *State ex rel. King v. UU Bar Ranch Ltd. P'ship*, 2009-NMSC-010, ¶ 20, 145 N.M. 769, 205 P.3d 816.

{6}     The right of redemption arises from Section 39-5-18(A), which states:

> After sale of real estate pursuant to the order, judgment or decree of foreclosure in the district court, the real estate may be redeemed by the former defendant owner of the real estate or by any junior mortgagee or other junior lienholder whose rights were judicially determined in the foreclosure proceeding.

The Legislature included a system of priority in the 2007 amendment to Section 39-5-18(A)(3), which states: "[T]he former defendant owner shall have the first priority to redeem the real estate. If the former defendant owner does not redeem the real estate as provided in this subsection, each junior mortgagee or junior lienholder shall have a right to redeem the real estate." *See Kaushal I*, 2021-NMCA-010, ¶¶ 11-13.

**{7}** The redemption statute and related precedent do not contemplate a fractional payment for a fractional interest by a subset of cotenants. The general rule for redemption is that "[t]he 'right to redeem' is merely the right of the mortgagor to reassert *complete fee simple ownership* of the land, upon payment of the debt and any other charges rightly assessed under the terms of the lien instrument or under statutory provision." 55 Am. Jur. 2d *Mortgages* § 743, Westlaw (database updated Feb. 2023) (emphasis added). The New Mexico redemption statute permits a former defendant owner to pay "the purchaser, at any time within nine months from the date of sale, the amount paid at the sale," including interest, taxes, penalties, and any other payments. Section 39-5-18(A)(1). The term "amount paid" sets the redemption amount at the full sum.

**{8}** When one cotenant petitions to redeem a foreclosure sale, "one cotenant's redemption inures to the benefit of the other cotenants." *Banker's Tr. Co. v. Woodall*, 2006-NMCA-129, ¶ 9, 140 N.M. 567, 144 P.3d 126. When a party clears a debt for their cotenants, such as in redemption of a mortgage, the redemption restores the title to its original condition. *See id.* ¶ 8 ("Redemption acts to restore the title of property to its status before the sale."). "[A] foreclosure sale does not extinguish a cotenancy until the time for redemption has passed." *Id.* ¶ 9. Under both the general rules on redemption and our jurisprudence on cotenancy redemptions, we remain unpersuaded that a cotenant redeeming a fraction of the redemption rights does not redeem the entire property interest in fee simple to the benefit of the cotenancy. *See Kaushal I*, 2021-NMCA-010, ¶ 17.

**{9}** However, a redeeming cotenant also is permitted to invoke the right of contribution from their cotenants. *Woodall*, 2006-NMCA-129, ¶ 9; *Torrez v. Brady*, 1932-NMSC-080, ¶ 25, 37 N.M. 105, 19 P.2d 183. The right of contribution is "[t]he right that gives one of several persons who are liable on a common debt the ability to recover proportionately from each of the others when that one person discharges the debt for the benefit of all." *Contribution*, *Black's Law Dictionary* (11th ed. 2019). "[T]he redemption or prevention from loss by one cotenant of common property by payment of an obligation or the purchase of an outstanding interest, which should be discharged or purchased proportionately by cotenants, inures to the benefit of the cotenants at their option, subject to the right of contribution." *Laura v. Christian*, 1975-NMSC-037, ¶ 8, 88 N.M. 127, 537 P.2d 1389. That right of contribution can be enforced through several legal mechanisms, including through a judicially created lien on the noncontributing cotenants' interests. *See id.* ¶ 10; *Chavez v. Chavez*, 1952-NMSC-050, ¶ 8, 56 N.M. 393, 244 P.2d 781. *See generally* 20 Am. Jur. 2d *Cotenancy and Joint Ownership* §§ 69-72, 81-83, Westlaw (database updated Feb. 2023).

**{10}** Although Kaushal held fifty percent of the redemption rights, as we determined in *Kaushal I*, those rights allowed him to redeem the entire property for the entire redemption price to his benefit and that of his cotenants. Kaushal's redemption, once validly exercised, stood in place of two former defendant owners redeeming the entire property interest. Kaushal's possession of merely fifty percent of the redemption right means that he owns half of the redeemed property in cotenancy with the other owners, heirs, and assignees to the property whose rights to redeem he did not purchase. Furthermore, he holds a right of contribution from his cotenants given he redeemed the property in full, unassisted by others that possess an ownership interest. *See Woodall*, 2006-NMCA-129, ¶ 9. The other cotenant owners' titles are restored to their original state, subject to Kaushal's right of contribution. The property as a whole remains subject to the remaining encumbrances associated therewith, such as those held by junior lienholders.[1] Upon remand, Kaushal may petition the district court to quiet title as appropriate given resolution of Kaushal's and the other owners' interest, and to enforce his right of contribution. *See Laura*, 1975-NMSC-037, ¶ 10.

**{11}** Kaushal asks this Court to declare him to be the sole owner of the property given that "other heirs did not exercise their rights to contribute within a reasonable time." This request is premature given the record does not support that Kaushal has requested contribution from his cotenants. The right of contribution is "the *ability* to recover proportionately" from one's cotenants. *Contribution*, *Black's Law Dictionary* (11th ed. 2019) (emphasis added). "[W]hen a cotenant purchases an outstanding title or claim to the common property, such purchase inures to the benefit of the common estate, subject only to the right of the purchasing cotenant *to require a proportionate contribution* from the other cotenants." *Torrez*, 1932-NMSC-080, ¶ 25 (emphasis added). Contribution is not something that must be offered; it is something that must be requested by the purchasing cotenant. The record before us does not indicate that Kaushal has requested contribution from his cotenants, but also no judgment has recognized his cotenancy with the proper parties such that he could have requested it by this point even five years after redemption. However, this issue may be settled in and following the quiet title proceeding on remand.

**{12}** Although we concluded in *Kaushal I* that the Trust substantially complied with the redemption statute *as a junior lienholder* since Kaushal argued otherwise, we are unpersuaded based on the record presented that the Trust was entitled fifty percent—and possibly any—title to the property following the property's redemption by an individual standing in place of a former defendant owner. *See* § 39-5-18(A)(3). The district court erred in determining the Trust to be a cotenant with Kaushal in possession

---

[1]Nothing about this opinion should be read to deprive the Trust, a junior lienholder, of its right to enforce its lien related to the property. We note that despite the Trust's contrary assertion, in passing, that it too was assigned a right of redemption by one of the four cotenants, there was never such a determination made by the district court. Indeed, Kaushal correctly points out in his reply brief that the purported assignment to the Trust of one such owner's right to redeem took place *after* the date by which said right was required to be effectuated. We will not address this issue in the first instance absent a ruling by the district court and a developed argument by the Trust as to the validity of the purported assignment. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed.").

of a fifty percent interest in the property. We remand to the district for further proceedings consistent with this opinion, which may include resolution of the title, determination of encumbrances, and enforcement of Kaushal's right of contribution related to remaining cotenant owners.

**CONCLUSION**

**{13}** For the above reasons, we reverse and remand for further proceedings consistent with this opinion.

**{14}  IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JACQUELINE R. MEDINA, Judge**