2004-NMSC-017

90 P.3d 985

CHASE MANHATTAN BANK, as trustee of IMC Home Equity Loan Trust 1998–4 under the pooling and servicing agreement dated as of June 1, 1998, Plaintiff–Respondent,

v.

John A. CANDELARIA, Jane C. Candelaria, Morequity, Inc., a Delaware corporation, John Doe, a tenant whose name is unknown, and Jane Doe, a tenant whose name is unknown, Defendants–Petitioners,

v.

Charles L. Reule, Third Party Plaintiff–Respondent.

v.

Carlo A. Roybal, Third Party Defendant–Intervenor–Petitioner.

No. 28002.

Supreme Court of New Mexico.

May 4, 2004.

**528**

Anthony James Ayala, Albuquerque, NM, for Petitioner Roybal.

Aldridge, Grammar, Jeffrey & Hammar, P.A., Will Jeffrey, Albuquerque, NM, for Respondent Reule.

## OPINION

MAES, Chief Justice.

{1} Petitioner Carl Roybal appeals from a judgment of the district court ordering him to pay Respondent Charles Reule for improvements Reule made to foreclosed property Reule bought at a judicial sale that was subsequently redeemed by Roybal. The Court of Appeals affirmed the judgment of the district court in an unpublished opinion, holding that New Mexico's Betterment Statutes, NMSA 1978, §§ 42–4–17 (1878) to –18 (1878), permit such an award. We then granted Roybal's petition for writ of certiorari to determine whether the Court of Appeals erred in concluding that Roybal was required to pay Reule for improvements under Section 42–4–17 when Roybal redeemed the property. We reverse the Court of Appeals and the district court.

## FACTS

{2} Chase Manhattan Bank brought an action to foreclose on property owned by John and Jane Candelaria. When the Candelarias failed to file an answer to the complaint, Chase Manhattan moved for default judgment, which the district court granted. The property was then sold at a judicial sale to Reule, who was the highest bidder at $ 71,000.00. Reule was informed at the sale that the property could be redeemed by the Candelarias or their assigns. Reule took immediate possession of the property and began making improvements to the property. Within five weeks of the sale, Reule had spent $ 10,917.45.

{3} Three weeks after the sale, the Candelarias assigned their right to redeem the property to Roybal. Several days later, Roybal filed a petition for a certificate of redemption in the district court. Along with his petition, Roybal tendered to the district court $ 71,000.00 plus interest, which represented the amount that was necessary to redeem the property under New Mexico's Redemption Statute. *See* NMSA 1978, § 39–5–18 (1987).

{4} Reule filed a response to Roybal's petition in which he generally did not contest the redemption of the property by Roybal, but he claimed that he was entitled to reimbursement for the time, materials, and labor he had invested into the property. Reule estimated his expenditures to be $ 10,917.45. Reule stated that if he was not allowed to be reimbursed, Roybal would be unjustly enriched.

{5} Several months after the filing of Roybal's redemption petition, and after much legal wrangling by the parties, the district court issued an order wherein the parties agreed that the funds deposited by Roybal would be released to Reule and that a certificate of redemption would be issued to Roybal. A certificate of redemption was subsequently issued to Roybal that day. In the order, the parties also agreed that the district court would retain jurisdiction to decide the issue concerning what additional sums, if any, should be paid to Reule. Following a hearing on this final issue, the district court entered an order in which it ruled that Reule was entitled to reimbursement in the amount of $ 10,638.35 for expenditures he made on property improvements as well as $ 641.85 in interest. Roybal appealed the decision to the Court of Appeals.

{6} In a divided opinion the Court of Appeals affirmed the judgment of the district court. The majority opinion held that under Section 42–4–17, Reule was entitled to reimbursement for the improvements he made. The majority opinion concluded that Section 39–5–18 "does not bar a court from ordering a redeemer to reimburse a purchaser at foreclosure for improvements made by that purchaser before a petition for a certificate of redemption is filed or served." *Chase Manhattan Bank v. Candelaria*, No. 22,625, slip op. at 8 (N.M.Ct.App. Mar. 13, 2003).

## DISCUSSION

{7} The issue that we have to resolve is whether Reule was entitled under the redemption statute or the betterment statute to reimbursement from Roybal for improvements Reule made to property he purchased at a judicial sale that was subsequently redeemed by Roybal. This involves statutory interpretation, which is a legal question that we review de novo. *State v. Davis*, 2003–NMSC–022, ¶ 6, 134 N.M. 172, 74 P.3d 1064.

{8} Basically, Roybal contends that requiring a redeemer to pay for improvements is not supported by the redemption statute and is contrary to the redemption statute's underlying policy. We agree. The redemption statute describes what the redeemer must pay in order to redeem the property. Under the redemption statute, the redeemer may redeem the property:

(1) by paying to the purchaser, his [or her] personal representatives or assigns, at any time within nine months from the date of sale, the amount paid, with interest from the date of purchase at the rate of ten percent a year, together with all taxes, interest and penalties thereon, and all payments made to satisfy in whole or in part any prior lien or mortgage not foreclosed, paid by the purchaser, with interest on such taxes, interest, penalties and payments made on liens or mortgages at the rate of ten percent a year from the date of payment; or

(2) by petitioning the district court in which the judgment or decree of foreclosure was entered for a certificate of redemption and by making a deposit of the amount set forth in Paragraph (1) of this subsection in cash in the office of the clerk of the district court in which the order, judgment or decree under which the sale was made was entered, at any time within nine months from the date of sale.

Section 39–5–18(A). Subsection D provides that the court's determination of the amount needed to redeem the property "shall include the money paid at the sale and all taxes, interest, penalties and payments made in satisfaction of liens, mortgages and encumbrances." Section 39–5–18(D). There is no mention of improvements or betterments in the statute. Thus, the only funds that a purchaser may recover under the redemption statute are those funds that the purchaser paid to acquire the property. Those funds include the amount the purchaser paid for the property, with interest, plus any taxes and penalties. Section 39–5–18(A)(1); *see Constr. Eng'g & Mfg. Co. v. Don Adams Mining Co.*, 91 N.M. 238, 239, 572 P.2d 1246, 1247 (1977) ("The statute appears straightforward and allows redemption by paying only the amount of the purchase price at the foreclosure sale plus taxes, interest and penalties."). Those funds also include any amount paid by the purchaser to satisfy outstanding liens or mortgages on the property, with interest, plus taxes and penalties. Section 39–5–18(A)(1). The statute does not allow the purchaser to recover for any funds paid for improvements. Therefore, under the redemption statute, Reule may not recover for any funds he spent on improvements.

{9} We also agree with Roybal that requiring the redeemer to pay for such improvements would contravene the public policy embodied in the redemption statute. One of the purposes of the redemption statute is to give the property owner, or certain others listed under the redemption statute, a reasonable opportunity to redeem the property. *See W. Bank of Las Cruces v. Malooly*, 119 N.M. 743, 749, 895 P.2d 265, 271 (Ct.App. 1995) ("Section 39–5–18 establishes a public policy in favor of permitting redemption from the purchaser at the judicial sale; to prevent redemption that is in accordance with the statute would be contrary to legislative policy."). This purpose would be defeated if redeemers were required to pay purchasers for improvements, in addition to those costs provided for in the redemption statute. Purchasers could make it more burdensome for redeemers to redeem their property by investing significant amounts of money into improvements, almost ensuring that the redeemer would be unable to redeem their property. The facts in the instant case illustrate how a purchaser could make redemption more burdensome for a redeemer, and in essence, deny the redeemer the right to redemption. In this case, Roybal moved to redeem the property shortly after the sale, although he had nine months from the date of the sale to redeem the property. *See*

§ 39–5–18(A). Reule immediately began making improvements to the property after he purchased it. Within five weeks of the sale, Reule had spent over $ 10,000 on improvements. The improvements increased the property's value by $ 24,000. Reule admits that the property was an investment property. If purchasers were entitled to be reimbursed for improvements, then purchasers could make it difficult for redeemers to redeem their property, knowing that redeemers would have to reimburse them for the improvements they made to the property, which redeemers might not be able to afford.

{10} Recognizing that the redemption statute does not allow a purchaser to recover funds paid for improvements, Reule contends that the Betterment Statute may be considered in a redemption proceeding. Accordingly, Reule asserts that he was entitled to reimbursement under the betterment statute. We disagree. The costs that a redeemer must pay to redeem a property are circumscribed by the redemption statute. The betterment statutes, which are found in the ejectment statutes, deal with ejectment actions. "At common law, any person making improvements on the lands of another, of such a nature that they became part of the realty, lost his [or her] time and labor, and the improvements inured to the benefit of the owner of the land." *Newton v. Thornton*, 3 N.M. 287, 293, 5 P. 257, 258 (1885). To afford innocent improvers relief from such harsh results, legislatures enacted betterment or occupying claimant statutes. *See* Restatement of Restitution § 42 cmt. c (1937). These statutes were designed to afford relief to those property improvers who honestly, but mistakenly, believed that they owned the property. *See Madrid v. Spears*, 250 F.2d 51, 54 (10th Cir.1957) ("These statutes are intended to modify and ameliorate the rigid common-law rule under which even an innocent improver was considered an interloper without legal remedy."). We believe that our betterment statutes similarly afford relief to those mistaken improvers who improve property that they honestly and in good faith believe they own. *See id.* at 53 ("Like most states, New Mexico has long since enacted a statutory scheme under which an occupying claimant in an ejectment action may plead and prove the value of the good faith improvements under color of title."). Because this was not an ejectment action, Reule was not entitled to relief under the betterment statute.

{11} Moreover, Reule was not entitled to reimbursement under equitable principles. "When a party makes improvements or confers a benefit upon the land of another with full knowledge that title is vested in another, or subject to dispute, the improver will not be entitled to restitution under the equitable doctrine of unjust enrichment." *E. Motor Inns, Inc. v. Ricci*, 565 A.2d 1265, 1272 (R.I.1989). Although we are sympathetic to Reule's predicament, Reule made the improvements knowing that the property could be redeemed by the Candelarias or their assigns. *See Bank of Santa Fe v. Garcia*, 102 N.M. 588, 591, 698 P.2d 458, 461 (Ct.App.1985); *McCloud v. AmSouth Bank*, 540 So.2d 75, 77 (Ala.Civ.App.1989) ("The law is well settled that one who has actual knowledge of an adverse claim to real property is not entitled to compensation for improvements made to the property after he [or she] acquired such knowledge."). As the redeemer, Roybal "was in a position to defeat the title of the purchaser." *Plaza Nat'l Bank v. Valdez*, 106 N.M. 464, 466, 745 P.2d 372, 374 (1987). Thus, Reule was not entitled to recovery under equitable principles. Therefore, the Court of Appeals erred in concluding that Reule was entitled to reimbursement under Section 42–4–17.

**CONCLUSION**

{12} We hold that the district court erred in ordering Roybal to reimburse Reule for improvements Reule made to the property. Therefore, we reverse the district court and the Court of Appeals, and remand this case to the district court for further proceedings consistent with this opinion.

{13} **IT IS SO ORDERED.**

WE CONCUR: PAMELA B. MINZNER, PATRICIO M. SERNA, RICHARD C. BOSSON and EDWARD L. CHÁVEZ, Justices.