The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **February 21, 2023**

**No. A-1-CA-39476**

**FREEDOM MORTGAGE CORPORATION,**

Plaintiff-Appellee,

v.

**KEN STEVENS, Personal Representative of the ESTATE OF JESSICA M. SAXON, Deceased; UNITED STATES OF AMERICA by and through the INTERNAL REVENUE SERVICE,**

Defendants-Appellees,

_____

**ROBERT J. ASHTON,**

Petitioner in Redemption/Respondent-Appellee,

and

**MAK INVESTMENTS LLC,**

Intervenor/Petitioner-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Sarah V. Weaver, District Court Judge**

Michael L. Danoff & Associates PC
Brett J. Danoff
Albuquerque, NM

for Appellee Stevens

Lorenz Law
Alice T. Lorenz
Albuquerque, NM

Risley Law Firm PC
Gary E. Risely
Farmington, NM

for Appellee Ashton

Higgins Law Firm
John F. Higgins
Albuquerque, NM

for Appellant

**OPINION**

**BOGARDUS, Judge.**

{1}     MAK Investments LLC (MAK) appeals various district court orders arising from Robert Ashton's redemption of property purchased by MAK at a foreclosure sale. MAK contends the district court erred by (1) granting summary judgment that Ashton's redemption was valid, (2) dismissing MAK's petition for declaratory relief in which MAK asked the district court to declare Ashton's redemption invalid, and (3) reducing the amount of money Ashton needed to redeem the property. We affirm the district court's orders granting summary judgment in favor of Ashton and dismissing MAK's petition for declaratory relief, but reverse the district court's judgment reducing the redemption amount.

**BACKGROUND**

{2}     Freedom Mortgage Corporation (FMC) brought an action to foreclose on property (the Property) owned by Jessica Saxon. Because Saxon had died, FMC named as defendant in its foreclosure complaint Ken Stevens, the personal representative of Saxon's estate. When Stevens failed to file an answer to the complaint, FMC moved for default judgment, which the district court granted. The Property was sold in June 2019 at a judicial sale to MAK, which was the highest bidder at $283,000. At least one member of MAK began occupying the Property.

{3}     In September 2019 Stevens assigned his right to redeem the Property to Ashton, and Ashton filed a petition for a certificate of redemption in the district court. Along with his petition, Ashton tendered to the district court $283,000 plus interest, which represented the amount necessary to redeem the property under New Mexico's redemption statute. *See* NMSA 1978, § 39-5-18 (2007).

{4}     MAK intervened in the foreclosure action, claiming that Ashton's redemption of the Property was void. Ashton then filed a motion to dismiss or, in the alternative, for summary judgment on MAK's claims. The district court granted summary judgment in favor of Ashton, ruling that Ashton's petition for redemption was valid. MAK appeals.

**DISCUSSION**

{5}     MAK's appeal requires us to determine whether the district court erred in entering three different orders arising from Ashton's redemption: (1) the order granting summary judgment in favor of Ashton based on the district court's determination that Ashton's redemption was valid; (2) the order dismissing MAK's petition for declaratory relief in which MAK again challenged the validity of Ashton's redemption; and (3) the order reducing the amount of money required to redeem the Property. We review each order in turn.

**I.     The District Court Did Not Err in Granting Summary Judgment That the Redemption Was Valid**

{6}     As discussed, the district court granted summary judgment in favor of Ashton, ruling that Ashton's redemption petition was valid. The district court reasoned that MAK had not established a legal or factual basis that the assignment of Stevens' redemption right to Ashton (the assignment) was invalid. MAK argues the district court improperly granted summary judgment in favor of Ashton.

{7}     An order granting summary judgment "is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Tafoya v. Rael*, 2008-NMSC-057, ¶ 11, 145 N.M. 4, 193 P.3d 551 (internal quotation marks and citation omitted). This Court reviews an order granting summary judgment de novo. *See Beggs v. City of Portales*, 2009-NMSC-023, ¶ 10, 146 N.M. 372, 210 P.3d 798. To the extent MAK's claims require us to interpret the redemption statute, our review is also de novo. *See Chapel v. Nevitt*, 2009-NMCA-017, ¶ 25, 145 N.M. 674, 203 P.3d 889 ("Resolution of this issue requires us to interpret the redemption statute, which is a matter of law that we review de novo.").

{8}     MAK argues the district court improperly granted summary judgment in favor of Ashton based on the court's erroneous conclusion that the assignment was valid. MAK contends (1) the assignment was invalid because the redemption statute does not permit the assignment, and (2) material disputed facts exist as to whether the assignment failed for lack of consideration. We review each argument in turn.

## A. The Redemption Statute Permitted the Assignment

**{9}** MAK first argues that the redemption statute did not permit the assignment. MAK contends that only the previous version of the redemption statute permitted assignment of the right to redeem and that Ashton's redemption right was not determined at a judicial foreclosure proceeding as required by the current version of the statute. We disagree.

**{10}** We first address MAK's argument that the redemption statute did not permit the assignment. The redemption statute provides, in relevant part, "After sale of real estate pursuant to the order, judgment or decree of foreclosure in the district court, the real estate may be redeemed by the *former defendant owner of the real estate . . . whose rights were judicially determined in the foreclosure proceeding.*" Section 39-5-18(A) (emphasis added). Importantly for our purposes, "the redemption statute identifies the term 'owner' as including an owner's 'personal representatives, heirs, successors *and assigns.*'" *BOKF, N.A. v. Unknown Heirs of Pacheco*, 2021-NMCA-010, ¶ 9, 484 P.3d 1020 (emphasis added) (quoting § 39-5-18(D)); *see BOKF, N.A.*, ¶ 22 ("The statutory right to redeem treats certain categories of non-owners, such as assignees, . . . as defendant owners."). "Consistent with the express language of the statute, New Mexico courts have held that the right of redemption is an assignable right." *Id.* ¶ 9. Accordingly, the statute authorized Stevens, as owner, to assign his right of redemption to Ashton. *See* § 39-5-18(A), (D); *BOKF, N.A.*, 2021-NMCA-

010, ¶¶ 9, 22; *see also Chapel*, 2009-NMCA-017, ¶ 25 ("[W]hen a statute's meaning is clear from its plain language, we must apply the statute as written by the Legislature." (internal quotation marks and citation omitted)).

{11}    To the extent MAK argues that the absence of a comma between "successors and assigns" in Section 39-5-18(D) limits those persons who may qualify to be assignees to those who are also successors, MAK fails to support this construction with citation to controlling authority. We therefore assume none exists. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists.").

{12}    MAK next argues that Ashton's redemption was invalid because Ashton's rights were not determined at a judicial foreclosure proceeding, pointing to language in Section 39-5-18(A) that the "real estate may be redeemed by the former defendant owner . . . *whose rights were judicially determined in the foreclosure proceeding.*" (Emphasis added.) We are unpersuaded.

{13}    MAK does not dispute that Stevens, as personal representative of the decedent's estate, was owner of the Property. *See* § 39-5-18(D) (defining "owner" to include the owner's personal representative). Nor does MAK dispute that Stevens' right to redeem the Property was "judicially determined in the foreclosure proceeding." Section 39-5-18(A). Accordingly, when Stevens assigned his

judicially-determined redemption right to Ashton, Ashton stepped into the shoes of Stevens, whose redemption right had previously been determined in the foreclosure proceeding. *See Inv. Co. of the Sw. v. Reese*, 1994-NMSC-051, ¶ 30, 117 N.M. 655, 875 P.2d 1086 ("[A]n assignee stands in the shoes of the assignor." (internal quotation marks and citation omitted)). *See generally* 6A C.J.S. *Assignments* § 111 (2023) (stating that an "assignee's rights are derivative"). *See also Chase Manhattan Bank v. Candelaria*, 2004-NMSC-017, ¶¶ 2-3, 135 N.M. 527, 90 P.3d 985 (noting that the property owners assigned their right to redeem the property several weeks after the foreclosure sale). The assignment was permitted under the redemption statute.

**B.      MAK's Challenge to the Assignment Based on Consideration Fails**

{14}      MAK next argues that the district court improperly granted summary judgment in favor of Ashton because material disputed facts exist as to whether the assignment failed for lack of consideration. MAK argues that "[s]ubstantial consideration is required to purchase [an owner's] right of redemption" and contends that the district court failed to address the factual issue as to whether Stevens received "actual consideration" from Ashton in exchange for the assignment. Even if we were to assume MAK is correct in its legal contention—that "[s]ubstantial consideration" is required to assign one's right to redeem—MAK's challenge to the assignment on this basis fails for lack of admissible evidence.

{15} "Once [the movant has] made a prima facie showing of entitlement to summary judgment, the burden of proving the existence of genuine material factual issues shift[s] to [the respondent], requiring them to come forward and show by affidavits or other means, *admissible evidence* indicating material facts tending to establish each required element of their claims." *Blauwkamp v. Univ. of N.M. Hosp.*, 1992-NMCA-048, ¶ 18, 114 N.M. 228, 836 P.2d 1249 (emphasis added). Affidavits supporting or opposing a summary judgment motion "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Rule 1-056(E) NMRA.

{16} Here, Ashton made a prima facie showing that consideration supported the assignment. Ashton attested that he was assigned the right of redemption for an agreed upon consideration that had been paid, and Stevens attested that he assigned the right of redemption to Ashton for "valuable consideration." In response, MAK submitted the affidavit of MAK member Chad Burson, which stated, "At the time the [a]ssignment of [r]edemption [r]ights was filed, . . . Ashton had not legally paid for or purchased the [a]ssignment . . . from . . . Stevens."

{17} Burson's affidavit, however, does not "show affirmatively" that he is "competent to testify" as to this matter. *See* Rule 1-056(E). Burson's affidavit does not attest that this statement was "made on personal knowledge," and does not

7

otherwise explain how he would have acquired personal knowledge of this matter. *See id.*; *see also Wood v. City of Alamogordo*, 2015-NMCA-059, ¶ 15, 350 P.3d 1185 (noting that a "non-movant may not rely on speculation or conclusions to overcome a movant's prima facie showing" and "affidavits . . . containing hearsay are not sufficient evidence of a fact"). MAK therefore did not introduce "admissible evidence indicating material facts tending to establish" the absence of consideration. *See Blauwkamp*, 1992-NMCA-048, ¶ 18. Accordingly, the district court did not err in granting summary judgment that Ashton's redemption was valid.

**II.     The District Court Did Not Err in Dismissing MAK's Petition for Declaratory Relief**

{18}     In its brief opposing Ashton's motion for summary judgment, MAK challenged the validity of Ashton's redemption, arguing that the assignment was not permitted under the redemption statute and failed for lack of consideration. At the April 2020 hearing on the motion, MAK pursued its argument that the redemption statute did not permit the assignment but failed to argue the issue of consideration. At the end of the hearing, the district court made oral rulings that the redemption statute permitted the assignment and that Ashton's redemption was valid.

{19}     On May 15, 2020—five days before the district court entered a written order memorializing its oral rulings from the summary judgment hearing—MAK filed a petition for declaratory relief under a new case number in the same judicial district as the existing redemption proceeding. Similar to the arguments it previously briefed

8

or argued at the summary judgment hearing in the redemption proceeding in which it intervened, MAK alleged in the petition that the redemption statute did not permit the assignment and that Ashton's payment for Stevens' redemption right did not constitute substantial consideration.[1] On June 1, 2020, the district court redivisioned MAK's action for declaratory relief to itself, and consolidated MAK's declaratory relief action with the existing redemption proceeding.

{20} On July 1, 2020, Ashton filed a motion to dismiss MAK's petition for declaratory relief. Then, on July 16, 2020, MAK filed an amended petition for declaratory relief, which added an allegation that Ashton attended the foreclosure sale and attached the sign-in sheet from the sale as evidence. After a hearing, the district court granted Ashton's motion to dismiss MAK's petition for declaratory relief, concluding that the petition was barred by res judicata and that MAK had no

---

[1]MAK argues in its reply brief that its rights in the redemption proceeding were improperly restricted by its "limited intervention," and that the district court prematurely entered summary judgment. Because MAK raised these arguments for the first time in its reply brief and has failed to specifically point out where, in the record, it invoked the district court's ruling on these issues, we decline to consider these points as potential grounds for reversal. *See Guest v. Berardinelli*, 2008-NMCA-144, ¶ 36, 145 N.M. 186, 195 P.3d 353 ("[W]e do not consider arguments raised in a reply brief for the first time."); *Crutchfield v. N.M. Dep't of Tax'n & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 ("[O]n appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the issue. Absent that citation to the record or any obvious preservation, we will not consider the issue.").

standing to file its amended petition for declaratory relief because it had previously "received and retained" redemption funds.

{21} On appeal, MAK argues the district court erroneously dismissed its petition for declaratory relief. MAK contends that it did not lose standing to challenge Ashton's right to redeem, that accepting certain redemption funds did not strip MAK of its right to challenge the redemption, and that the district court improperly applied the doctrine of res judicata. We conclude the district court properly dismissed MAK's petition for declaratory relief, though on somewhat different grounds.

{22} Regarding res judicata, MAK argues that the district court improperly applied this doctrine to bar its petition for declaratory relief. "A party asserting res judicata . . . must establish that (1) there was a final judgment in an earlier action, (2) the earlier judgment was on the merits, (3) the parties in the two suits are the same, and (4) the cause of action is the same in both suits." *Potter v. Pierce*, 2015-NMSC-002, ¶ 10, 342 P.3d 54. MAK challenges elements one and four, arguing that at the time the district court ruled on MAK's declaratory relief action no final order existed and that its declaratory relief action constituted a different cause of action. Assuming without deciding there was no final judgment in the earlier action, and therefore res judicata did not apply, MAK's declaratory relief action was nonetheless barred under the related doctrine of priority jurisdiction.

{23}    The doctrine of "priority jurisdiction serves the same purpose as res judicata, but operates where there is not a final judgment and instead there is a pending case." *Cruz v. FTS Constr. Inc.*, 2006-NMCA-109, ¶ 15, 140 N.M. 284, 142 P.3d 365; *see id.* (stating that one purpose behind the doctrine of priority jurisdiction is "to prevent vexatious litigation and multiplicity of suits" (alterations, internal quotation marks, and citation omitted)). Where priority jurisdiction applies, "a second suit based on the same cause of action as a suit already on file will be abated." *Id.* ¶ 8 (internal quotation marks and citation omitted). The elements of priority jurisdiction are:

> (1) the two suits must involve the same subject matter or the same cause of action, (2) the two suits must involve the same parties, (3) the first suit must have been filed in a court of competent jurisdiction in the same state, and (4) the rights of the parties must be capable of adjudication in the first-filed action.

*Id.* ¶ 13.

{24}    Here, the elements of priority jurisdiction are satisfied. As to the first element, MAK's suit for declaratory relief involved the same subject matter as that addressed in the earlier suit in which MAK intervened—the validity of Ashton's redemption of the Property. Regarding the second element, MAK does not dispute that the parties in the two suits were the same. As to the third and fourth elements, the first suit was filed in a court of competent jurisdiction in the same state as the declaratory relief action, and the rights of Ashton and MAK were capable of adjudication in the redemption proceeding. Thus, assuming res judicata does not apply because of the

11

lack of a final judgment, MAK's declaratory relief action is nonetheless abated under the related doctrine of priority jurisdiction.

**{25}** Although the district court did not rely on priority jurisdiction in its order, "[u]nder the right for any reason doctrine, we may affirm the district court's order on grounds not relied upon by the district court if those grounds do not require us to look beyond the factual allegations that were raised and considered below." *State v. Vargas*, 2008-NMSC-019, ¶ 8, 143 N.M. 692, 181 P.3d 684 (internal quotation marks and citation omitted). Here, we are not required to look beyond the factual allegations raised and considered below to affirm on the grounds of priority jurisdiction. At the hearing on Ashton's motion to dismiss MAK's petition for declaratory relief, Ashton argued that the petition raised the same issues the court had previously considered and that to prevent serial litigation, MAK should be barred from raising issues it could have raised previously. *See Cruz*, 2006-NMCA-109, ¶ 15 (stating that one purpose behind the doctrine of priority jurisdiction is "to prevent vexatious litigation and multiplicity of suits" (alterations, internal quotation marks, and citation omitted)). Accordingly, the district court did not err in dismissing MAK's petition for declaratory relief.

### III. The District Court Erred in Reducing the Redemption Amount

**{26}** At the April 2020 summary judgment hearing granting Ashton's redemption petition, the district court did not determine the amount of money necessary for

12

redemption. Then in May 2020 Ashton filed a complaint for damages and equitable relief, seeking compensation for the Property's fair market rental value from September 2019 when Ashton filed his petition for redemption, through the date MAK surrendered the Property after the district court granted Ashton's petition for redemption. After hearings on the matter, the district court ruled that "[Ashton] is entitled to a reduction in the statutory amount of money required for redemption due to damages for the loss of the use of the [P]roperty" from September 5, 2019 to June 1, 2020. The district court thus concluded that "the amount of money necessary for the redemption under [Section] 39-5-18(C) should be reduced by $21,400," based on the fair market rental value of the Property during that period.

{27}     On appeal, MAK argues that the district court erred in reducing the redemption amount by $21,400. MAK contends that the redemption statute does not authorize such a reduction based on rent for Ashton's loss of use of the Property during the period in which the validity of the redemption was litigated. In response, Ashton concedes that the redemption statute does not provide for rent damages based on the redeemer's loss of use of a property. Instead, Ashton argues that, rather than a statutory claim for damages made pursuant to the redemption statute, his "claim was a common law claim for loss of use damages." We conclude that the district court erred in reducing the redemption amount, and explain.

13

**{28}** Ashton does not dispute that his damages claim was filed as a part of the redemption proceeding. The district court likewise premised its ruling on the redemption statute, concluding that "the amount of money necessary for the redemption under [Section] 39-5-18(C) should be reduced by $21,400." We therefore begin our analysis by examining whether Ashton was entitled to this reduction in the redemption amount under the redemption statute. *See* § 39-5-18.

**{29}** Although Ashton concedes that the redemption statute does not provide for this remedy, we are not bound by his concession "as to applicable law, because we must conduct our own analysis" of the redemption statute, which "presents a question of law that we review de novo." *See Tucson Elec. Power Co. v. Tax'n & Revenue Dep't*, 2020-NMCA-011, ¶¶ 6, 10, 456 P.3d 1085 (alteration, internal quotation marks, and citation omitted). The redemption statute provides that the district court's determination of the amount necessary to redeem the property "shall include the money paid at the sale and all taxes, interest, penalties and payments made in satisfaction of liens, mortgages and encumbrances." Section 39-5-18(C). There is no mention of a reduction in the redemption amount by the rental value of a property when the property is occupied by a purchaser during litigation addressing the redemption's validity. *Cf. Chase Manhattan Bank*, 2004-NMSC-017, ¶ 8 (stating the redemption statute does not mention improvements and therefore did not allow a purchaser to recover funds paid for improvements). Accordingly, the redemption

statute's language indicates that the Legislature did not intend to allow for this reduction in rent from the redemption amount. *See Cordova v. Cline*, 2021-NMCA-022, ¶ 9, 489 P.3d 957 ("The Legislature knows how to include language in a statute if it so desires." (alteration, internal quotation marks, and citation omitted)).

{30}   This interpretation is bolstered by the language of NMSA 1978, Section 39-5-22 (1931), which provides, in relevant part, "Whenever any property shall be redeemed under the terms or provisions of any section of this act . . .  the purchaser . . . *shall not be responsible for rents and profits, but shall account only for waste*." (Emphasis added.) This Court interpreted Section 39-5-22 in *Malooly*, and our decision in that case is instructive. *See W. Bank of Las Cruces v. Malooly*, 1995-NMCA-044, ¶ 31, 119 N.M. 743, 895 P.2d 265.

{31}   In *Malooly*, a purchaser bought a property at a foreclosure sale, a junior lienholder later petitioned the court to redeem the property, and the purchaser opposed the redemption. *See id.* ¶¶ 1, 3-4. The parties litigated the validity of the redemption, and the district court ultimately ruled that the redemption was valid. *See id.* ¶ 4. During the period between the purchaser's acquisition of the property at the foreclosure sale and the district court's ruling that the redemption was valid, the purchaser leased the property and received $2,000 in rental proceeds. *Id.* This Court concluded that the purchaser was not liable for rents she received based on Section 39-5-22, which "protect[ed the purchaser's] right to retain rentals received prior to

15

the date" the district court ruled that the redemption was valid. *Malooly*, 1995-NMCA-044, ¶ 31. Similarly, here, we conclude that under Section 39-5-22, MAK is not liable for the rental value of the property prior to the date the district court determined that Ashton's redemption was valid.[2] Accordingly, the district court erred in concluding that Ashton was entitled to this reduction in the statutory redemption amount.

{32}    Ashton nevertheless argues that his claim for rent damages was a common law claim for loss of use damages, not a statutory claim pursuant to the redemption statute. Ashton premises this argument on his contention that MAK was a trespasser, pointing out that at least one MAK member occupied the Property at a time when the right of possession belonged to the former owner. Ashton argues that an owner has a right to recover for any trespass that continues after the owner acquires his ownership rights. We are unpersuaded.

{33}    As an initial matter, although Ashton filed his petition for redemption in September 2019, the district court did not issue its order determining that his

---

[2]To the extent Ashton claims he is entitled to rent under a theory of unjust enrichment, he does not address *Malooly*'s conclusion that a purchaser is entitled to retain rental proceeds before the district court rules on the validity of the redemption. *See* 1995-NMCA-044, ¶ 31. Ashton has therefore not persuaded us to exercise our discretion to award damages "under the equitable doctrine of unjust enrichment." *See Chase Manhattan Bank*, 2004-NMSC-017, ¶ 11 (internal quotation marks and citation omitted); *Hort v. Gen. Elec. Co.*, 1978-NMCA-125, ¶ 17, 92 N.M. 359, 588 P.2d 560 (stating that "equitable relief is discretionary").

redemption petition was valid until May 2020. *Cf. Malooly*, 1995-NMCA-044, ¶¶ 4, 31 (concluding that the purchaser was entitled to rental proceeds received prior to the date the district court ruled that the redemption was valid). We also note that Ashton did not assert any claim for trespass in his complaint for damages. As to the merits of Ashton's common law argument, we decline, under the circumstances of this case, to permit Ashton to recover rent under this theory and avoid the language of Sections 39-5-18 and 39-5-22.

{34} "The costs that a redeemer must pay to redeem a property are circumscribed by the redemption statute." *Chase Manhattan Bank*, 2004-NMSC-017, ¶ 10. Thus, in *Chase Manhattan*, we rejected a purchaser's attempt to avoid the redemption statute's language and recoup funds spent improving the property before its redemption. *See id.* ¶¶ 2-4, 10. Although the purchaser recognized that the redemption statute did not allow a purchaser to recover funds paid for improvements, he nevertheless contended that the betterment statute, part of the ejectment statutes, could be considered in a redemption proceeding and that he was entitled to reimbursement under the betterment statute. *See id.* ¶ 10. This Court rebuffed this argument, concluding, "[b]ecause this was not an ejectment action, [the purchaser] was not entitled to relief under the betterment statute." *Id.*

{35} Similarly, here, Ashton brought his claim for damages as part of a redemption proceeding, and the district court premised its ruling on the redemption statute,

concluding that the "the amount of money necessary for the redemption under [Section] 39-5-18(C) should be reduced by $21,400." As a result, the costs that Ashton was required to pay to redeem the Property "are circumscribed by the redemption statute." *See Chase Manhattan Bank*, 2004-NMSC-017, ¶ 10.

**CONCLUSION**

{36}     We affirm the district court's orders granting summary judgment in favor of Ashton and dismissing MAK's amended petition for declaratory relief. We reverse the district court's judgment granting Ashton's petition for damages and equitable relief, and remand for further proceedings on this issue in accordance with this opinion.

{37}     **IT IS SO ORDERED.**


_____

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**


_____
**SHAMMARA H. HENDERSON, Judge**


_____
**JANE B. YOHALEM, Judge**

18