The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **May 8, 2023**

**No. A-1-CA-39012**

**NATIONSTAR MORTGAGE LLC,**

      Plaintiff,

v.

**CHRISTOPHER B. TAPIA, ERICA TAPIA, and 21ST MORTGAGE CORPORATION,**

      Defendants,

and

**TAL REALTY, INC.,**

      Petitioner-Appellee,

v.

**ASHOK KAUSHAL,**

      Petitioner-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Francis J. Mathew, District Court Judge**

Marrs Griebel Law, Ltd.
Clinton W. Marrs
David S. Ketai
Albuquerque, NM

for Appellee

Ferrance Law, P.C.
David A. Ferrance
Albuquerque, NM

for Appellant

# OPINION

**BUSTAMANTE, Judge, retired, sitting by designation.**

{1}     Appellant Ashok Kaushal appeals the district court's determination by summary judgment that Appellee TAL Realty, LLC (TAL Realty) validly redeemed a property in Santa Fe, and the dismissal of Kaushal's petition for redemption. Kaushal argues that (1) genuine issues of material fact exist as to whether his assignor had an ownership interest in the property; (2) someone who signs a mortgage is a "former defendant owner," pursuant to NMSA 1978, Section 39-5-18(A) (2007); and (3) the Recording Act, NMSA 1978, §§ 14-9-1 to -9 (1851-52, as amended through 1991) protects his purchase of the right of redemption of the property. We affirm.

## BACKGROUND

{2}     In December 2016, Christopher Tapia (Chris) executed a promissory note secured by a mortgage (the mortgage) on real property in Santa Fe (the property). The mortgage was signed by Chris and his then-spouse Erica Tapia (Erica). Erica did not sign the promissory note. The day the mortgage was signed, Chris apparently signed a quitclaim deed in favor of himself and Erica.[1] The mortgage and the quitclaim deed were recorded on January 2017 in Santa Fe County.

---

[1]The quitclaim deed is not in the record proper. However, the quitclaim deed was referenced in the complaint for foreclosure and at the hearing on TAL Realty's motion for summary judgment, and TAL Realty does not dispute its existence.

{3}     In May 2018, a court in California entered a judgment dissolving the marriage of Chris and Erica (the divorce decree). The judgment adopted a marital settlement agreement stipulated by the parties that divided their assets, including the property. The marital settlement agreement stated, "Parties agree [the property] is separate property purchased before the marriage by [Chris]." The California judgment was not recorded in Santa Fe County.

{4}     In November 2018, Nationstar Mortgage LLC (the Bank) filed a complaint for foreclosure against Chris, Erica, and a junior lienholder. After none of the defendants answered the complaint, the Bank obtained a default judgment. The property was sold at auction in August 2019 to Breckenridge Properties 2016, LLC (Breckenridge). The district court approved the sale in October 2019, noting that the sale was "subject only to the one[-]month right of redemption of . . . Defendants," Chris, Erica, and a junior lienholder. Before the district court approved the sale, Chris and Erica made three relevant assignments of their rights of redemption. Chris assigned his right of redemption to TAL Realty in September 2019 and it was recorded with the Santa Fe County Clerk a few days later. Erica assigned her right of redemption to Breckenridge in September 2019 and the assignment was recorded on September 9, 2019. Erica also assigned her right of redemption to Kaushal on September 20, 2019.

2

{5}    TAL Realty initially filed a petition for redemption of the property in September 2019, naming Breckenridge as the respondent; however, it did not deposit any funds concurrent with its petition. TAL Realty timely, nonjudicially exercised its redemption right by paying Breckenridge the redemption amount in mid-October 2019. The nonjudicial redemption deed was acknowledged before a notary public in December 2019. In late October 2019, Kaushal filed a timely petition to redeem, and the next day the district court entered an order allowing Kaushal to deposit the redemption amount into the district court registry, which he did. In November 2019, TAL Realty filed a "Restated Petition for Redemption of Real Estate" and deposited the required redemption amount in the district court's registry.

{6}    After the competing petitions for redemption were filed, TAL Realty moved for summary judgment arguing its redemption should be confirmed and Kaushal's petition should be denied. TAL Realty argued that the marital settlement agreement divested Erica of any right of redemption, any assignment from Erica to Kaushal was invalid, and Chris's redemption right was the only valid right. After briefing and a telephonic hearing on the matter, the district court granted TAL Realty's motion for summary judgment and declared that TAL Realty validly redeemed the property from Breckenridge.

## DISCUSSION

## I.    Standard of Review

{7}    "Summary judgment is reviewed on appeal de novo." *Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 8, 139 N.M. 12, 127 P.3d 548. We review the evidence "in the light most favorable to the party opposing summary judgment." *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146. "In New Mexico, summary judgment may be proper when the moving party has met its initial burden of establishing a prima facie case for summary judgment." *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 10, 148 N.M. 713, 242 P.3d 280. "Once this prima facie showing has been made, the burden shifts to the non[]movant to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Id.* (internal quotation marks and citation omitted).

{8}    To the extent we must engage in statutory interpretation, our review is de novo. *State v. Smith*, 2004-NMSC-032, ¶ 8, 136 N.M. 372, 98 P.3d 1022. Generally, "[i]n construing the language of a statute, our goal and guiding principle is to give effect to the intent of the Legislature." *Lujan Grisham v. Romero*, 2021-NMSC-009, ¶ 23, 483 P.3d 545. "In determining legislative intent, we look to the plain language of the statute and the context in which it was enacted, taking into account its history and background." *Pirtle v. Legis. Council Comm.*, 2021-NMSC-026, ¶ 14, 492 P.3d 586.

## II.    Statutory Redemption

{9}    We start by reviewing the law on redemption. Statutory redemption gives persons who have lost in judicial proceedings "one last opportunity" to reclaim their property. *Cortez v. Cortez*, 2009-NMSC-008, ¶ 32, 145 N.M. 642, 203 P.3d 857. The purposes of redemption are "to give the property owner, or certain others listed under the redemption statute, a reasonable opportunity to redeem the property," and "to encourage full value bidding at foreclosure sales and to protect mortgagors." *Mortg. Elec. Registration Sys., Inc. v. Montoya*, 2008-NMCA-081, ¶ 8, 144 N.M. 264, 186 P.3d 256 (internal quotation marks and citations omitted); *see HSBC Bank USA v. Fenton*, 2005-NMCA-138, ¶ 7, 138 N.M. 665, 125 P.3d 644 ("[T]he commonly stated purposes of statutory redemption are to encourage full value bidding at foreclosure sales and to protect mortgagors."), *superseded by statute as stated in Mortg. Elec. Registration Sys., Inc.*, 2008-NMCA-081, ¶ 8.

{10}    Under the redemption statute, a foreclosed property sold at a judicial sale may be redeemed by a "former defendant owner of the real estate . . . whose rights were judicially determined in the foreclosure proceeding." Section 39-5-18(A). Former defendant owners include "their respective personal representatives, heirs, successors and assigns." Section 39-5-18(D). A foreclosed property may be redeemed by either nonjudicial redemption or judicial redemption. Section 39-5-18(A)(1), (2). When a person files a petition to redeem and deposits the required

funds into the court registry, the district court must determine whether the petitioner may redeem and the amount of money necessary to redeem. Section 39-5-18(C). Where, as here, there are conflicting claims, the district court must also determine which of the parties are entitled to redeem. *See Fenton*, 2005-NMCA-138, ¶ 10 (adopting the first in time rule to determine priority of competing rights of redemption). We now turn to Kaushal's arguments.

**A.      Kaushal Does Not Present a Genuine Issue of Material Fact**

{11}      TAL Realty argued in its motion for summary judgment that because the divorce decree divested Erica of any interest in the property, she did not have a right of redemption, and, therefore, Kaushal did not have a right of redemption. The crux of its argument was that TAL Realty had the only valid right of redemption. The district court granted summary judgment in favor of TAL Realty and dismissed Kaushal's redemption petition with prejudice.

{12}      Kaushal argues that the evidence presents a genuine issue of material fact regarding whether Erica was a former defendant owner and had a valid right of redemption. *See* § 39-5-18(A) (stating that a foreclosed property sold at judicial sale may be redeemed by a "former defendant owner of the real estate . . . whose rights were judicially determined in the foreclosure proceeding"). Kaushal points to the quitclaim deed from Chris to Erica and Chris and to the fact that Erica was a party to the mortgage. He argues that subject to certain exceptions, property acquired

6

during marriage is community property, and those exceptions do not apply, so "there was ample evidence . . . to show that the statement in the [marital settlement agreement] is incorrect and that [Erica] was a former defendant owner for the purposes of redemption." We disagree.

{13} Even assuming that Chris signed a quitclaim deed in favor of himself and Erica, the record demonstrates that Erica had no redemption right to assign to Kaushal in September 2019. Our determination rests on our review of the divorce decree and the marital settlement agreement. *See Maestas v. Martinez*, 1988-NMCA-020, ¶ 15, 107 N.M. 91, 752 P.2d 1107 ("Where an issue to be determined rests upon the interpretation of documentary evidence, an appellate court is in as good a position as the [district] court to determine the facts and draw its own conclusions."). The divorce decree is titled "Judgment." Erica was the petitioner and Chris was the respondent. The form of judgment provides it was heard as a "[d]efault or uncontested" matter and "[b]y declaration under Family Code [S]ection 2336." The judgment also provides that the "[p]roperty division is ordered as set forth in the attached . . . [s]ettlement agreement, stipulation for judgment, or other written agreement." The marital settlement agreement straightforwardly states that Chris and Erica agreed that the property was Chris's property. The divorce decree, which includes the marital settlement agreement, is fundamentally a stipulated judgment. *See Benavidez v. Benavidez*, 2006-NMCA-138, ¶ 8, 140 N.M. 637, 145 P.3d 117

("The same rules of interpretation apply in construing the meaning of a court order or judgment as in ascertaining the meaning of other written instruments. The plain meaning of the language used is the primary indicator of intent." (internal quotation marks and citation omitted)).

{14}    A stipulated judgment, otherwise known as a consent judgment, "is a negotiated agreement between the parties that is entered as a judgment of the court." *Pope v. Gap, Inc.*, 1998-NMCA-103, ¶ 22, 125 N.M. 376, 961 P.2d 1283. "[S]tipulated judgments have characteristics of both judgments and contracts." *Allred v. N.M. Dep't of Transp.*, 2017-NMCA-019, ¶ 29, 388 P.3d 998. Stipulated judgments are "similar to a judgment because [they are] entered and enforceable as a judgment; however, [they are] like a contract because [their] terms and conditions are reached by the mutual agreement of the parties." *Pope*, 1998-NMCA-103, ¶ 22. Stated more succinctly, stipulated judgments are "achieved by negotiation and settlement, rather than by a full-blown, contested adjudication of all issues." *Id.* ¶ 27 (internal quotation marks and citation omitted). "As a general rule, a stipulated judgment is not considered to be a judicial determination, but a contract between the parties." *Allred*, 2017-NMCA-019, ¶ 29 (alteration, internal quotation marks, and citation omitted); *see Lewis v. City of Santa Fe*, 2005-NMCA-032, ¶ 11, 137 N.M. 152, 108 P.3d 558 ("It is well established in this state that settlements and judgments

8

entered by the consent of the litigants essentially represent contractual agreements.").

{15} With the force of a judgment, Erica and Chris agreed that the property was Chris's property when they signed the divorce decree, which included the marital settlement agreement. *See Pope*, 1998-NMCA-103, ¶ 22. Contrary to Kaushal's assertion, it is irrelevant whether the property might have been community property before Chris and Erica's agreement. The parties' agreement that it was Chris's property in the divorce decree extinguished any prior interest Erica might have had. *See Allred*, 2017-NMCA-019, ¶ 29. The divorce decree was not appealed, it is controlling, and no court in New Mexico has the power to invalidate it. We need not make any inferences to come to this conclusion, as Kaushal does not dispute the authenticity of the document. *See Benavidez*, 2006-NMCA-138, ¶ 8. The document presents no ambiguity that provides the basis of a disputed question of fact that requires reversal.

**B.    Erica Was Not a Former Defendant Owner as a Signatory to the Mortgage**

{16} Kaushal next argues that regardless of the chain of title of the property, Erica was a "former defendant owner" entitled to a right of redemption because she was a defendant and a mortgagor whose interest was foreclosed. We disagree.

{17} Our analysis rests upon the definition of "former defendant owner." *See* § 39-5-18(A) (stating that a foreclosed property sold at judicial sale may be redeemed by

9

a "*former defendant owner of the real estate* . . . whose rights were judicially determined in the foreclosure proceeding" (emphasis added)). Kaushal argues that the plain meaning of the phrase is ambiguous because it is unclear if "former" modifies "defendant," "owner," or both. He claims the purpose of the redemption statute demonstrates that a mortgagor should include a mortgagor whose rights were determined in a foreclosure proceeding. We need not decide whether the phrase is ambiguous. Under any reading, the statute necessarily requires an ownership interest at the time of assignment to exercise a right of redemption. Erica did not have an ownership interest at the time she assigned her right of redemption to Kaushal, thus she cannot be a "former defendant owner." We explain.

{18} We start by noting the difference between a mortgage and a note. "[T]he [promissory] note is the loan and the mortgage is a pledged security for that loan." *Bank of N.Y. v. Romero*, 2014-NMSC-007, ¶ 35, 320 P.3d 1. A "mortgage only secures the payment of the debt[ and] has no life independent of the debt." *Id.* (internal quotation marks and citation omitted). A "mortgage, both on its face and under New Mexico law, only gives the mortgagee the right to enforce the lien by foreclosing on the property." *Slemmons v. Massie*, 1984-NMSC-108, ¶ 5, 102 N.M. 33, 690 P.2d 1027. Most importantly, a mortgage "does not purport to convey title to the property and cannot constitute color of title." *Id.* Given that a mortgage alone

10

cannot transfer title to a mortgage, simply signing one does not give a mortgagor ownership interest in a mortgaged property.

{19} This Court has stated that "the commonly stated purposes of statutory redemption are to encourage full value bidding at foreclosure sales and to protect mortgagors." *Fenton*, 2005-NMCA-138, ¶ 7. However, *Fenton* is clear that a purpose of the redemption statute "is to give the *property owner* . . . a reasonable opportunity to redeem the property." *Id.* (emphasis added) (internal quotation marks and citation omitted). The purpose of the redemption statute is not to provide someone who simply signed a mortgage an opportunity to redeem a property, but to provide that opportunity to someone who has a previous ownership interest or financial obligation connected to the property. *See Chase Manhattan Bank v. Candelaria*, 2004-NMSC-017, ¶ 9, 135 N.M. 527, 90 P.3d 985 ("One of the purposes of the redemption statute is to give the property owner, or certain others listed under the redemption statute, a reasonable opportunity to redeem the property."). For these reasons, solely signing a mortgage cannot make a person a "former defendant owner" for the purposes of Section 39-5-18(A).

{20} Here, Chris executed the promissory note secured by a mortgage signed by Chris and Erica. Kaushal does not provide evidence that Erica had any ownership interest in the property that survived the execution of the marital settlement

11

agreement. As such, she was not a former defendant owner entitled to a right of redemption on the property.

### III.    Kaushal Was Not Entitled to the Protection of the Recording Act

**{21}**    Kaushal's final argument is that the Recording Act, Sections 14-9-1 to -9, protected him against TAL Realty's use of the unrecorded marital settlement agreement. We disagree and explain.

**{22}**    The Recording Act "is designed to protect the title of a subsequent innocent purchaser for value without notice of an unrecorded deed." *Cano v. Lovato*, 1986-NMCA-043, ¶ 26, 105 N.M. 522, 734 P.2d 762. It is also "designed to prevent injustice by protecting innocent purchasers for value who have invested money in property." *Id.* ¶ 29 (omission, internal quotation marks, and citation omitted)

**{23}**    The Recording Act requires that

> [a]ll deeds, mortgages, leases of an initial term plus option terms in excess of five years, or memoranda of the material terms of such leases, assignments or amendments to such leases, leasehold mortgages, United States patents and other writings affecting the title to real estate shall be recorded in the office of the county clerk of the county or counties in which the real estate affected thereby is situated.

Section 14-9-1. "No deed, mortgage or other instrument in writing not recorded in accordance with Section 14-9-1 . . . shall affect the title or rights to, in any real estate, of any purchaser . . . without knowledge of the existence of such unrecorded instruments." Section 14-9-3. According to the Recording Act, "[a] subsequent purchaser prevails over an owner if, at the time the purchaser acquires an interest in

12

the property, the owner's deed is unrecorded and the purchaser has no knowledge of the unrecorded instrument." *Cano*, 1986-NMCA-043, ¶ 30. However, Section 14-9-2 provides that a recorded instrument "shall be notice to all the world of the existence and contents of the instruments so recorded from the time of recording." For the purposes of our analysis, we assume without deciding that the Recording Act applies to rights of redemption.

{24}    Kaushal argues he was a good faith purchaser—or "a subsequent innocent purchaser for value without notice of an unrecorded deed," *see Cano*, 1986-NMCA-043, ¶ 26—entitled to the protection of the Recording Act because the county records "showed that the property was owned jointly by [Chris and Erica on August 28, 2019, before he purchased the right of redemption on September 20, 2019]." However, the record demonstrates that Erica issued a quitclaim deed for her right of redemption to Breckenridge on September 4, 2019, and the quitclaim deed was recorded on September 9, 2019. Kaushal purchased the right of redemption from Erica both after he checked the county records and after the quitclaim deed from Erica to Breckenridge. Regardless of the efficacy of the quitclaim deed from Erica to Breckenridge, on September 4, 2019, Kaushal was on constructive notice, *see* § 14-9-2, that there was some sort of cloud on the title of Erica's right of redemption at that time, and, yet, still purchased Erica's right of redemption. As such, Kaushal

13

was not a good faith purchaser when he was assigned Erica's right of redemption on September 20, 2019, and cannot claim the protections under the Recording Act.

**{25}** Kaushal argues it is improper to rely on Erica's quitclaim deed to Breckenridge because evidence of the quitclaim deed was filed the day before the district court's hearing on TAL Realty's motion for summary judgment and the district court did not rely on it when making its decision, which would unfairly require this Court to affirm on the right for any reason doctrine. We disagree. The document was filed with the district court before the hearing, and Kaushal's counsel had an opportunity to respond to the evidence at the hearing. "On appeal from the grant of summary judgment, we ordinarily *review the whole record*." *BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7 (emphasis added). Thus, it is not improper to base our decision on this evidence.

**{26}** We conclude that the Recording Act does not protect Kaushal because he was on constructive notice about the cloud on Erica's title because of the recording on September 4, 2019, of a quitclaim deed from Erica to Breckenridge. We affirm the district court's grant of summary judgment.

**CONCLUSION**

**{27}** For the foregoing reasons, we affirm the district court.

14

{28}     **IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge,
retired, sitting by designation.**

**WE CONCUR:**

_____
**J. MILES HANISEE, Judge**

_____
**GERALD E. BACA, Judge**

15